Willowdean M. Cate sued Ray G. Cooper and Betty Jean Cooper, requesting that the Coopers be enjoined from trespassing upon her property. The Coopers counterclaimed, contending that they had been in possession of the specific land in question for the requisite number of years and that they owned the property by adverse possession.
The trial judge personally viewed the disputed property twice and heard ore tenus evidence. The trial court stated in its order that
 "[w]hen the Court considers the evidence of this case against the great burden of the defendants [Coopers], the Court finds that the defendants have failed to prove by clear and convincing evidence all of the necessary and essential elements of adverse possession in order to establish title to the disputed property."
The trial court further ordered the Coopers to "refrain from trespassing on [Cate's] property and cease any interference, disruption, threats or harassment of [Cate's] claim to her land and her right to enjoy and exercise dominion over the same."
The Coopers appeal, contending that the trial court's judgment is not supported by the evidence and is plainly erroneous, palpably incorrect, or manifestly unjust.
This case involves a dispute between two coterminous landowners concerning the ownership of a portion of Lot 3, Block "A," Crestwood Subdivision, in Talladega County. The disputed portion is adjacent to the north line of Lot 3, Block "A," of the Crestwood Subdivision. This area may also be identified and described as lying south of the south line of Lot 2, Block "A," of the subdivision.
The Coopers contend that they have gained title to the area in dispute by adverse possession and that the boundary line should be established where an "old fence" used to be.
On the other hand, Cate contends that the "old fence," which was built in the early 1940s and is no longer in existence, was never intended to establish the boundary between the property and that any use of the disputed area by the Coopers was with the permission of Cate or her predecessor in title.
The facts, as reflected in the record, are as follows: In 1943, Ida McMichael acquired a one-half interest in Lot 3 of the Crestwood Subdivision and moved onto the lot that same year. She acquired the remaining interest in the property in 1947, and as of the day of trial in 1990, Ms. McMichael still lived on Lot 3. In December 1986, Ms. McMichael conveyed her interest in the property to her daughter, Willowdean Cate. It is undisputed that Cate and her mother, the predecessor in title, had clear record title to Lot 3 and had assessed the property for taxes for more than the last 20 years.
The Coopers purchased Lot 2 of the Crestwood Subdivision, which is coterminous with Lot 3, in 1960 from Mr. I.C. Mills. Mr. Mills had occupied the property from 1942 to 1960. At the time Mr. Mills purchased the property in 1942, there was an old fence running between Lot 2 and Lot 3. However, this fence is no longer in existence. The Coopers testified that when Mr. Mills sold them the property, he represented to them that the old fence was "about the line."
The Coopers resided on the property until the mid- to late-1960s, at which time they moved to California for a short time. Since returning from California, they have remained on the property. The Coopers testified that they have cleared the land up to the "old fence line" since 1960, done some gardening there, maintained a grapevine there, and parked equipment and vehicles there. They contend that no one had ever contested these uses of the disputed area. Further, they contend that they built a small barn or shed on a portion of Lot 3 and that two outbuildings had been located *Page 70 
in the disputed area. Mr. Cooper testified that he had used these outbuildings for a few years and then had dismantled them and that no one had questioned the use or destruction of these structures.
In 1988, Ms. Cate and the Coopers each had the property surveyed. Both surveys confirmed that the alleged location of the "old fence" was not the boundary line. Instead, the boundary line, established by the surveys, was closer to the Coopers' house, resulting in the Coopers owning less land than they had thought. They contend that they had adversely possessed the land in dispute, and, therefore, that the true boundary line should be established at the place where the "old fence" used to be, and not in accordance with the boundary line established by the surveys.
Cate contends that her mother, her predecessor in title, was unaware of any claims to her property by the Coopers. She testified that she has never "had any trouble with a neighbor" and that her possession of Lot 3 has always been peaceable. Cate's mother also testified that the Coopers asked her permission to build a barn or shed on a portion of her property. Further, she testified that she had asked the Coopers to remove some "junk" from the property in dispute and that the Coopers had promised to remove it.
Cate's mother also testified that sometime in the 1940s, a barbed wire fence was erected for the purpose of pasturing cattle on the land. She stated that this fence was never intended to establish the boundary lines between Lot 3 and Lot 2. She testified that the fence was not right on the boundary line; rather, she said, it was "all around" and came over onto her land.
It is well settled that a party claiming title to land by adverse possession has a heavy burden and must present clear and convincing proof of such possession. Morrison v. Boyd,475 So.2d 509 (Ala. 1985). In cases involving coterminous landowners, a party must show that his possession of the land in dispute was actual, hostile, open, notorious, exclusive, and continuous for a 10-year period. Tidwell v. Strickler,457 So.2d 365 (Ala. 1984). We also note that the presumption is in favor of the record owner. Morrison.
We further note that where testimony is presented ore tenus in a boundary line case between coterminous landowners, the judgment is presumed correct. Tidwell. The judgment need only be supported by credible evidence, and, if so supported, the judgment will not be disturbed unless it is palpably erroneous, without supporting evidence, or manifestly unjust. Tidwell.
This presumption is especially strong in adverse possession cases and is further strengthened if the trial court personally views the property in dispute. Howell v. Bradford,570 So.2d 643 (Ala. 1990).
As noted above, the Coopers contend that they proved adverse possession of the land up to the place where the "old fence" used to be. Although there was evidence that would support the Coopers' view of the case, there was also credible evidence that supports Cate's position that the Coopers were using the disputed property with her or her mother's permission.
Evidence in adverse possession cases is extremely difficult to weigh at the appellate level. See Scarbrough v. Smith,445 So.2d 553 (Ala. 1984). Witnesses often testify with reference to exhibits or make gestures that are not preserved in the record. This is why the presumption of correctness normally accorded findings in an ore tenus case is especially strong in adverse possession cases. Scarbrough.
There was credible evidence to support the trial court's conclusion that the Coopers failed to prove by clear and convincing evidence all of the elements of adverse possession.
The judgment in this case is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur. *Page 71