[This opinion has been published in *Ohio Official Reports* at 81 Ohio St.3d 577.]

GRACE, APPELLEE, *v.* KOCH ET AL., APPELLANTS; MAYFLOWER SAVINGS &
LOAN COMPANY, APPELLEE.

[Cite as *Grace v. Koch*, 1998-Ohio-607.]

*Real property—Requirements to acquire title by adverse possession.*

To acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years.

(No. 96-2620—Submitted January 20, 1998—Decided May 6, 1998.)

APPEAL from the Court of Appeals for Hamilton County, No. C-950802.

————————————

{¶ 1} In the early 1960s, Leonard L. Grace, Jr. built a house on Wuest Road in Colerain Township. The land ("parcel 44") had been given to him by his parents from a larger tract ("parcel 43") that they owned. Grace constructed a house and driveway on parcel 44, and he and his father built a split-rail fence thirty-four feet to the north of the driveway to keep livestock from straying onto parcel 44. The fence did not follow the property line, and the thirty-four-foot strip between the driveway and the fence was wholly inside parcel 43.

{¶ 2} In 1970, Grace sold parcel 44 to Anthony H. and Elizabeth A. Koch. To facilitate the sale, Grace obtained an easement from his parents over parcel 43 so that the Kochs could use the existing driveway, which encroached on parcel 43 by five feet, and conveyed this easement to the Kochs. The Kochs knew at the time and testified subsequently that they did not own the land between the driveway and the fence ("the strip"), which was part of parcel 43. Nevertheless, the Kochs began using the strip as a sideyard and continued to use it as such through the time of the current litigation.

**{¶ 3}** In 1991, after his father passed away, Grace became the owner of parcel 43. In January 1992, he mortgaged parcel 43 to Mayflower Savings & Loan Company ("Mayflower").

**{¶ 4}** At some point in 1970, Anthony Koch sought permission from Grace to mow the grass on the strip and received express permission. Grace's parents agreed. Koch testified that he had never discussed his use of the strip as a sideyard with either Grace or Grace's parents. Neighbors testified that they assumed that the Kochs owned the strip but that no one had ever told them so. Grace's parents never used the strip. The record is unclear as to whether Grace used it since obtaining title to parcel 43. It is not disputed that the Kochs used the strip, from the time they purchased parcel 44 through the time of litigation, by parking cars on it, installing a swing set, planting a tree, storing oil drums, and erecting a car port.

**{¶ 5}** There is no indication in the record that there were any disputes over the ownership or use of the strip from 1970 through 1991. That changed in 1992. Grace became upset about the noise from a race car belonging to the Kochs' son. In July 1992, when Koch spread gravel over the strip, Grace objected and ordered Koch to stop trespassing. When Koch refused, Grace parked his truck on the strip to prevent Koch from spreading more gravel. He also removed the portions of the fence that separated the strip from the remainder of parcel 43.

**{¶ 6}** In September 1992, Grace filed a complaint against the Kochs for trespass, seeking an injunction and damages for trespass. The Kochs filed a counterclaim to quiet title in them through adverse possession and for damages. The Kochs joined Mayflower as a party defendant. After trial, the trial court found that the Kochs owned the strip by adverse possession and awarded them $577.49 in damages.

**{¶ 7}** On appeal, the court of appeals reversed, stating that the Kochs "did not prove by clear and convincing evidence, not even by a preponderance, that their use of the strip was sufficiently exclusive, hostile, or notorious for the required

twenty-one years to take title to the strip by adverse possession." The court remanded to the trial court with instructions that title to the strip should be restored to Grace and that damages for the Kochs' trespass should be determined.

{¶ 8} The cause is now before this court pursuant to the allowance of a discretionary appeal.

————————————

*Barrett & Weber* and *C. Francis Barrett*, for appellee Leonard L. Grace, Jr.

*Barrett & Weber* and *M. Michele Fleming*, for appellee Mayflower Savings & Loan Co.

*Gregory R. Wilson Co., L.P.A.,* and *Gregory R. Wilson,* for appellants.

————————————

**PFEIFER, J.**

{¶ 9} In this case, we examine the common-law doctrine of adverse possession. For the reasons that follow, we hold that adverse possession must be proven by clear and convincing evidence and affirm the court of appeals' determination that the Kochs had not established title by adverse possession.

{¶ 10} To acquire title by adverse possession, the party claiming title must show exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years. *Pennsylvania Rd. Co. v. Donovan* (1924), 111 Ohio St. 341, 349-350, 145 N.E. 479, 482. See, also, *State ex rel. A.A.A. Invest. v. Columbus* (1985), 17 Ohio St.3d 151, 153, 17 OBR 353, 356, 478 N.E.2d 773, 776; *Gill v. Fletcher* (1906), 74 Ohio St. 295, 78 N.E. 433, paragraph three of the syllabus; *Dietrick v. Noel* (1884), 42 Ohio St. 18, 21; R.C. 2305.05. Failure of proof as to any of the elements results in failure to acquire title by adverse possession. *Pennsylvania Rd. Co. v. Donovan,* 111 Ohio St. at 349-350, 145 N.E. at 482.

{¶ 11} As a preliminary matter, we must clarify the quantum of proof needed to establish each element of an adverse possession claim, something this

court has not done definitively apart from the cotenant context.[1] See *Demmitt v. McMillan* (1984), 16 Ohio App.3d 138, 140, 16 OBR 146, 148, 474 N.E.2d 1212, 1215.

{¶ 12} The court of appeals spoke at length about adverse possession being disfavored. We agree. A successful adverse possession action results in a legal titleholder forfeiting ownership to an adverse holder without compensation. Such a doctrine should be disfavored, and that is why the elements of adverse possession are stringent. See 10 Thompson on Real Property (Thomas Ed.1994) 108, Section 87.05 ("there are no equities in favor of a person seeking to acquire property of another by adverse holding"). We believe that the burden of proof should be equally rigorous. A substantial majority of our sister states agree and already apply the clear and convincing evidentiary standard, or a variant thereof, to adverse possession claims.[2] We hold that to acquire title by adverse possession, a party

---

1. In *Gill v. Fletcher* (1906), 74 Ohio St. 295, 78 N.E. 433, this court stated, "[A] tenant in common cannot assert title by adverse possession against his co-tenant unless he shows a definite and continuous assertion of adverse right by overt acts of unequivocal character clearly indicating an assertion of ownership of the premises to the exclusion of the right of the co-tenant." *Id.* at 305-306, 78 N.E. at 436. See *Hogg v. Beerman* (1884), 41 Ohio St. 81, paragraph three of the syllabus; *Youngs v. Heffner* (1880), 36 Ohio St. 232, paragraph one of the syllabus. The court enunciated an extremely high standard to establish adverse possession against a cotenant because possession by one cotenant is presumed to be possession by all. *Ferenbaugh v. Ferenbaugh* (1922), 104 Ohio St. 556, 559, 136 N.E. 213, 214-215. As this case does not involve a cotenant, we will not rely on the *Gill* standard.

2. Thirty-three states, and the District of Columbia, require adverse possession to be proven by clear and convincing evidence or some variant thereof. See *Cooper v. Cate* (Ala.1991), 591 So.2d 68, 70; *Curran v. Mount* (Alaska 1982), 657 P.2d 389, 391; *LaRue v. Kosich* (1947), 66 Ariz. 299, 303, 187 P.2d 642, 645 (clear and competent evidence); *Shonafelt v. Busath* (1944), 66 Cal.App.2d 5, 7-8, 151 P.2d 873, 875 (clear and competent evidence); *Wadsworth Realty Co. v. Sundberg* (1973), 165 Conn. 457, 462, 338 A.2d 470, 473 (clear and positive proof); *Estate of Wells v. Estate of Smith* (D.C.App.1990), 576 A.2d 707, 711; *Bailey v. Hagler* (Fla.App.1991), 575 So.2d 679, 681; *Lai v. Kukahiko* (1977), 58 Hawaii 362, 569 P.2d 352, paragraph seven of the syllabus; *E. Lizard Butte Water Corp. v. Howell* (1992), 122 Idaho 679, 682, 837 P.2d 805, 808; *Sierens v. Frankenreider* (1994), 259 Ill.App.3d 293, 296, 198 Ill.Dec. 444, 632 N.E.2d 1055, 1058 (clear and unequivocal evidence); *Piel v. Dewitt* (1976), 170 Ind.App. 63, 74, 351 N.E.2d 48, 55, fn. 10 (strict, clear, positive, and unequivocal proof); *Council Bluffs Sav. Bank v. Simmons* (Iowa 1976), 243 N.W.2d 634, 637; *Commonwealth Dept. of Parks v. Stephens* (Ky.App.1966), 407 S.W.2d 711, 713 (clear and unequivocal proof); *Marja Corp. v. Allain* (Me.1993), 622 A.2d 1182, 1184; *Hart v. Detroit*

must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years.

**{¶ 13}** Grace first took action to assert ownership in July 1992, when Anthony Koch began spreading gravel over the strip and Grace attempted to stop him.[3]  Therefore, to establish adverse possession, the Kochs must prove by clear and convincing evidence that each element of adverse possession had been established since 1971.  We find it unnecessary to address each of the elements of

---

(1982), 416 Mich. 488, 497, 331 N.W.2d 438, 442 (clear and positive proof); *SSM Invest. v. Siemers* (Minn.1980), 291 N.W.2d 383, 384; *Rice v. Pritchard* (Miss.1992), 611 So.2d 869, 871; *Copanas v. Loehr* (Mo.App.1994), 876 S.W.2d 691, 697; *Grimsley v. Estate of Spencer* (1983), 206 Mont. 184, 198, 670 P.2d 85, 92-93 (claimant bears heavy burden); *Vagnoni v. Gibbons* (1991), 251 N.J.Super. 402, 409, 598 A.2d 530, 534; *Marquez v. Padilla* (1967), 77 N.M. 620, 624, 426 P.2d 593, 596; *Groman v. Botar* (1996), 228 A.D.2d 412, 413, 644 N.Y.S.2d 58, 59; *Benson v. Taralseth* (N.D.1986), 382 N.W.2d 649, 653; *Willis v. Holley* (Okla.1996), 925 P.2d 539, 540 (clear and positive evidence); *Lee v. Hansen* (1978), 282 Ore. 371, 375, 578 P.2d 784, 787 (clear and positive evidence); *Stevenson v. Stein* (1963), 412 Pa. 478, 482, 195 A.2d 268, 270 (credible, clear, and definite proof); *Locke v. O'Brien* (R.I.1992), 610 A.2d 552, 555; *Clark v. Hargrave* (App.1996), 323 S.C. 84, 87, 473 S.E.2d 474, 477; *Lewis v. Moorhead* (S.D.1994), 522 N.W.2d 1, 3; *Marchant v. Park City* (Utah 1990), 788 P.2d 520, 523-524 (payment of taxes required for entire statutory period); *Grappo v. Blanks* (1991), 241 Va. 58, 62, 400 S.E.2d 168, 171; *Lilly v. Lynch* (1997), 88 Wash.App. 306, 316, 945 P.2d 727, 733 (clear, cogent, convincing evidence); *Brown v. Gobble* (1996), 196 W.Va. 559, 474 S.E.2d 489, paragraph two of the syllabus.

Fourteen states require adverse possession to be proven by the preponderance of the evidence or a variant thereof.  See *Massey v. Price* (1972), 252 Ark. 617, 618-619, 480 S.W.2d 337, 339 (clear preponderance or greater weight of the evidence); *Gerner v. Sullivan* (Colo.1989), 768 P.2d 701, 706; *Phillips v. State ex. rel. Dept. of Natural Resources & Environmental Control* (Del.1982), 449 A.2d 250, 255; *Kerce v. Bell* (1951), 208 Ga. 131, 136, 65 S.E.2d 592, 595; *Rathborne v. Hale* (La.App.1996), 667 So.2d 1197, 1200; *Urban Site Venture II L.P. v. Levering Assoc. Ltd. Partnership* (1995), 340 Md. 223, 229, 665 A.2d 1062, 1065, citing *Miceli v. Foley* (1990), 83 Md.App. 541, 563, 575 A.2d 1249, 1260; *Inhabitants of Cohasset v. Moors* (1910), 204 Mass. 173, 179, 90 N.E. 978, 980; *Lewis v. Poduska* (1992), 240 Neb. 312, 481 N.W.2d 898, paragraph ten of the syllabus; *Warren v. Shortt* (1994), 139 N.H. 240, 244, 652 A.2d 140, 142; *Pitcock v. Fox* (1995), 119 N.C.App. 307, 309, 458 S.E.2d 264, 266; *Rhodes v. Cahill* (1990), 802 S.W.2d 643, 645; *Russell v. Pare* (1974), 132 Vt. 397, 401, 321 A.2d 77, 81 ("fairly and reasonably supported by credible evidence"); *Hillard v. Marshall* (Wyo.1995), 888 P.2d 1255, 1258; *Kruse v. Horlamus Industries, Inc.* (1986), 130 Wis.2d 357, 366, 387 N.W.2d 64, 68 (greater weight of the credible evidence).

3. The act of mortgaging the property in January 1992 was probably insufficient to toll the statutory period because "[a]n act by the possessor of land intended to cause a cessation of use does not produce an interruption of use unless a cessation of use, temporarily at least, results." 5 Restatement of the Law, Property (1944) 2939, Section 459, Comment *c*.

adverse possession because the Kochs did not establish by clear and convincing evidence that they held the strip adversely to Grace for the entire statutory period.

{¶ 14} This court has stated that "[i]t is the visible and adverse possession with an intent to possess that constitutes [the occupancy's] adverse character," *Humphries v. Huffman* (1878), 33 Ohio St. 395, 402, and that "[t]he occupancy must be such as to give notice to the real owner of the extent of the adverse claim." *Id.* at 404. In *Lane v. Kennedy* (1861), 13 Ohio St. 42, this court stated that to make possession adverse, "there must have been an intention on the part of the person in possession to *claim title, so manifested* by his declarations or his acts, that a failure of the owner to prosecute within the time limited, raises a presumption of an extinguishment or a surrender of his claim." (Emphasis *sic*.) *Id.* at 47.

{¶ 15} The Vermont Supreme Court stated the same proposition more colorfully when it declared that to establish adversity, "[t]he tenant must unfurl his flag on the land, and keep it flying so that the owner may see, if he will, that an enemy has invaded his dominions and planted his standard of conquest." *Darling v. Ennis* (1980), 138 Vt. 311, 313, 415 A.2d 228, 230. See, also, *Philbin v. Carr* (1920), 75 Ind.App. 560, 591, 129 N.E. 19, 30.

{¶ 16} There is no question that the Kochs used the strip. They mowed the grass, parked cars in the strip, and their children played in the strip. The Kochs also placed firewood, oil drums, and a swing set in the strip.[4] While we consider the case a close one, we conclude that the record does not contain clear and convincing evidence that Grace or his parents were on notice that their dominions had been invaded in 1971. The Kochs asked for the Graces' permission before proceeding to mow the strip. Mr. Koch conceded that he knew that the strip belonged to Grace and that he never would have used it without permission. Absent clear and

---

4. The car port (1983) and the tree (1986 or 1987) were put in place long after the crucial year of 1971.

convincing evidence of the adversity of the Kochs' claim to the strip for the entire statutory period, adverse possession must fail.

{¶ 17} Accordingly, we affirm the judgment of the court of appeals and remand the cause to the trial court for restoration of title to the strip to Grace and determination of damages for the Kochs' trespass on the strip.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, COOK and LUNDBERG STRATTON, JJ., concur.

_____