[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
This appeal is brought by Appellant, Edward Mengerink, from a judgment of the Court of Common Pleas of Van Wert County finding in favor of Appellees, Samuel and Lillian Swinson, in an adverse possession action.
Mr. Mengerink and the Swinsons are adjacent landowners in Van Wert, Ohio. In the fall of 1996, a dispute arose between the parties regarding the ownership of a fifteen foot strip of land ("the strip") originally considered to be part of Inlot 1315, which is owned by Mr. Mengerink. On November 5, 1996, this strip of property became the subject of an adverse possession lawsuit filed by the Swinsons, the owners of neighboring Inlot 1314. The Swinsons' claimed that as successors in interest to Inlot 1314, they had received the fifteen foot strip of Mr. Mengerink's land through adverse possession. Furthermore, the Swinsons requested the common pleas court quiet title of the land in their names.
In January of 1998, a bench trial was held to determine the ownership of the property. On February 12, 1998, the trial court issued a judgment entry finding the Swinsons, as the successor in interest of Inlot 1314, had taken possession of the disputed strip by adverse possession. On May 5, 1998, the court issued an amended judgment entry after being notified that its first entry contained an error in the legal description of the land. Appellant filed an appeal from the May, 1998, judgment. When the case came for review to this court, it became clear that the trial court had not only changed the legal description of the land in its amended judgment entry granting adverse possession, but it had also substituted a critical word in the entry which gave the indication that the court found one of the elements of adverse possession had not been met. Because of the resulting inconsistency within the entry, this court remanded the judgment for clarification. The trial court entered a nunc pro tunc entry correcting and clarifying its previous entry, finding all the elements of adverse possession were met and granting right and title to the disputed strip to the Swinsons.
Appellant appeals the trial court's decision granting adverse possession to the Swinsons, asserting the following assignment or error:
 The Trial Court abused its discretion and erred as a matter of law by finding that the Appellees had held the disputed property in an open and notorious possession with the permission of the listed property holder for a period in excess of 21 years.
To acquire property by adverse possession, the party claiming title under the common-law doctrine must demonstrate "exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." Grace v. Koch (1998), 81 Ohio St.3d 577,579. Adverse possession must be proven by clear and convincing evidence. Id. at syllabus. "Clear and convincing evidence is that proof which establishes in the minds of the trier of fact a firm conviction as to the allegations sought to be proved." Cross v. Ledford (1954), 161 Ohio St. 469, 477. Upon review of the entire record of proceedings in this case, this court finds that the standard of proof has not been met.[1]
The evidence demonstrates that in 1950, both Inlot 1314 and 1315 were owned by Edward William Mengerink, Sr., Appellant's father. While these properties were under his common ownership, Mengerink, Sr., moved a house to Inlot 1314. Apparently, Mengerink Sr. was either not aware or not concerned with the property line between Inlots 1314 and 1315, as subsequent surveys of the land showed that the eastern side of the house encroached on Inlot 1315.[2]
Around this same time, the Mengerink family started a business out of a building located on Inlot 1315. This property and the building on it were subsequently passed to Appellant. Between the east side of the residence located on Inlot 1314 and the west side of the business structure on Inlot 1315, there was a strip of land approximately 20 feet wide which was part of Inlot 1315.
In 1952, Mengerink, Sr. sold Inlot 1314 and the residence on it. Sometime in 1965, Carol Archambeau and Jack Burkhead purchased Inlot 1314, from Marcile Hall. When Archambeau and Burkhead divorced in the late 1960's, the property remained in Mr. Burkhead's name. Mr. Burkhead died in 1994 and the property passed to his daughter, Barb Baker. Ms. Baker sold the property in 1995 to the Swinsons. From 1965 until 1995, Ms. Baker had either lived on the property with her family or lived on the property directly behind and abutting Inlot 1314.[3] Ms. Archambeau also lived for a time on the property behind Inlot 1314.
Both Ms. Archambeau and Ms. Baker testified at trial regarding their understanding of the property lines and the use of the strip of land on the east side of the residence located on Inlot 1314. Both women stated that they had always thought that the property line extended east from the residence up to a gas cap located about five feet from Mr. Mengerink's business building. This perception was based on statements made by Marcile Hall, the previous owner. Furthermore, Ms. Archambeau testified that during a conversation with Phil Mengerink, Appellant's son, Phil related his belief that the gas cap marked the property boundary of Inlot 1314 and 1315. Another neighbor, Ronald Dunn, likewise testified to a similar conversation wherein Phil Mengerink indicated that the property line between the lots ran along the gas cap line. When they purchased the property in 1995, the Swinsons also believed that the lot extended to the gas cap. Apparently, it was not until the Swinsons commissioned a survey in 1996, that the parties became aware of the true property line.
We note at this point that any mistake by the property owners regarding the true property lines is not material to a demonstration of adverse possession. The doctrine of adverse possession applies to persons who honestly enter and hold land in the belief that it is their own, as well as to persons who knowingly appropriate the land of another for the purpose of acquiring title. Vanasdal v. Brinker (1985), 27 Ohio App.3d 298,299, citing Yetzer v. Thoman (1866), 17 Ohio St. 130, 133. Moreover, it is not necessary that the title owner have actual knowledge of adverse use since the owner is charged with such knowledge when one enters into open and notorious possession of the land under a claim of right. Id. citing Smith v. Krites
(1950), 90 Ohio App. 38, 43.
A demonstration of adverse possession must be judged on a case by case basis. Thus, in order to determine whether adverse possession should have been granted in this case depends on the evidence presented at trial regarding the use and treatment of the land. According to the testimony of Ms. Archambeau and Ms. Baker, during their family's ownership, they maintained and mowed the area east of the house and used it for parking. Ms. Baker remembered playing in the side yard as a child. Moreover, in the late 1960's, Mr. Burkhead parked a boat on the strip which remained there for nearly ten years. At no time did Ms. Archambeau or Ms. Baker request Appellant's permission to make such use of the land nor did Appellant voice any objection to their acts.
Although Ms. Baker moved out of the house in 1973, she stated her brother later used the house and parked on the strip. She also testified that her father subsequently used the residence and parked on the strip. Specifically, Ms. Baker stated, "My dad would park there when he lived there. Not all the time. Sometimes he would park on the street because he was ill." Furthermore, in 1995, Ms. Baker parked a camper on the strip for approximately nine months.
When Inlot 1314 was sold to the Swinsons, the evidence established that they continued to use the eastern strip of yard for parking. Mrs. Swinson also testified that they maintained the lawn. In January of 1996, the Swinsons had a stone driveway put down on the strip using left over materials supplied by their neighbor, Mr. Dunn. Mr. Dunn testified at trial that from what he had observed of the use of the land, he thought the strip of yard east of the residence on Inlot 1314 belonged to the owners of Inlot 1314.
Appellant and his son, Phil Mengerink,[4] both testified at trial that either Phil or one of their employees mowed the area west of their building when it appeared to require it. Although Appellant stated that he was aware that the owners of Inlot 1314 had used his strip of land on occasion to park their boat, car or camper, this did not bother him or interfere with his business and so he did not object to their use of the land. Phil Mengerink testified that he did not recall any conversations wherein he ever indicated that the property line between Inlots 1314 and 1315 ran along the gas cap line. Moreover, Phil Mengerink testified that around 1995, after a request by Chuck Swinson, he granted Swinson permission to park his vehicle on the disputed strip.
Our analysis of this claim of adverse possession begins with the recognition that the transfer of land by adverse possession is disfavored in the law. "Generally speaking, since there are no equities in favor of a person seeking to acquire property of another by adverse holding, his acts are to be strictly construed." Demmitt v. McMillan (1984), 16 Ohio App.3d 138, 141
quoting 5 Thompson, Commentaries On The Modern Law of Real Property (1979) 604, Section 2543. When viewing the facts presented in the instant case, we do not find Appellees have met the burden demonstrating all elements of adverse possession by clear and convincing evidence. Grace, supra.
Regarding the elements of "open and notorious" possession, we have previously held that:
 * * * To be open, the use of the disputed property must be without attempted concealment. * * * To be notorious, a use must be known to some who might reasonably be expected to communicate their knowledge to the owner * * * [or] so patent that the true owner of the property could not be deceived as to the property's use. * * *
 Klinger v. Premier Properties (Nov. 17, 1997), Logan App. No. 8-97-10, unreported, quoting Walls v. Billingsly (Aug. 18, 1992), Allen App. No. 1-92-11, unreported; Hindall v. Martinez (1990),69 Ohio App.3d 580, 583.
We find the evidence demonstrated that the owners of Inlot 1314 used the strip of land on the eastern side of the house in an open and obvious manner. They mowed the area and parked cars there. The act of mowing grass alone is not enough to demonstrate possession. Klinger, supra, citing Montieth v. Twins Falls UnitedMethodist Church (1980), 68 Ohio App.2d 219, 225. In any case, Appellant testified that he was aware of their use of this property, he saw the cars, the boat, and the camper stationed in the area. Consequently, the use of the strip by owners of Inlot 1314 was open and notorious.
Turning to the elements of hostility and adversity, the Supreme Court of Ohio has stated that any use of the land inconsistent with the rights of the titleholder is adverse or hostile. Kimball v. Anderson (1932), 125 Ohio St. 241, 244. Adverse use of land has also been described as nonpermissive use of land. McCune v. Brandon (1993), 85 Ohio App.3d 697, 700. The evidence was undisputed that from 1965 to 1996, none of the owners of Inlot 1314 had asked Appellant to use his land. Moreover, the parking and recreational use made of the land by the owners of Inlot 1314 was inconsistent with the rights of Appellant, titleowner.
Appellees' case for adverse possession fails on the remaining two elements to the claim. Appellees did not demonstrate that the use of the land was exclusive nor continuous for a period in excess of 21 years. To be exclusive, we have previously stated that an adverse possessor's use of the property must be exclusive of the true owner entering onto the land and asserting his right to possession. Klinger, supra. The titleowner in this case was never denied possession of the land. Although he did not assert his authority over the land, he testified that he did mow the area from time to time. There was nothing in the record to demonstrate that the owners of Inlot 1314 ever tried to keep Appellant off of the strip.
Furthermore, not only was there no evidence that the owners of Inlot 1314 used the strip for recreation or parking to the exclusion of the titleowner, there was no evidence that this area was used continuously used for a period in excess of 21 years. There was limited evidence presented at trial regarding the frequency or duration with which the owners of Inlot 1314 parked on the strip. The testimony presented on this point established that a boat sat on the strip for a period of nearly ten years beginning, apparently, in the late 1960's. The closest Appellees come to establishing a continuous use of the property after the removal of the boat, is Ms. Baker's testimony that she played on the strip as a child and her family mowed the area and parked on the strip. How often the owners parked on the strip, whether as a daily routine or on a more sporadic basis, was not established. Ms. Baker did state that during her father's residency on the property, he parked on the strip, but "[n]ot all the time." Even if the owners of Inlot 1314 adversely possessed the strip east of the residence for the ten year period of time during which their boat rested on the property, we do not find that the subsequent periodic use of the land for children's play and parking cars, without any indication of the commencement and duration of the use, establishes continuous use for the statutory period.Whitford v. MGM Limited (Sept. 6, 1995), Medina App. No. 2382-M, unreported.
As to the area of Inlot 1315 which is occupied by the residence on Inlot 1314, we agree with the trial court that all the elements of adverse possession have been met by clear and convincing evidence. It should also be mentioned that Appellees attempted to demonstrate adverse possession through the use of an air conditioner installed on the eastern side of the house in 1987 or 1988. Because we find insufficient evidence supporting a claim of adverse possession of the eastern strip of land (with the exception of the area occupied by the house) prior to 1987, any claim of adverse possession to the area occupied by the air conditioner also fails in that 21 years have not passed since adverse use of land began. For the foregoing reasons, and to the extent described above, we sustain Appellant's assignment of error.
Having found error prejudicial to the Appellant herein, in the particulars assigned and argued, we reverse the judgment of the trial court and remand the cause for further proceedings not inconsistent with this opinion.
Judgment reversed and cause remanded.
SHAW, P.J., and BRYANT, J., concur.
[1] As a threshold matter, we note that the record does not contain the exhibits admitted at trial. This court was informed by the court reporter in the case that the exhibits were inadvertently thrown out by the reporter when cleaning out an evidence room. However, because the exhibits were merely used to depict the physical character of the land (which is not in issue on appeal) and did not go to demonstrate the elements of adverse possession, they are not necessary to our review of Appellant's assignment of error. This court does have before it the trial transcript containing the witness testimony used to establish the elements of adverse possession from which to determine this appeal.
[2] At trial, a surveyor called by Appellees testified that the house sat approximately one to three feet over the property line. A surveyor called by Appellant testified that the house was only four and a half inches over the property line.
[3] Ms. Baker testified that from her bordering property, she had full view of the Inlot 1314.
[4] Phil Mengerink now runs the business located on Inlot 1315. He testified that he was familiar with the strip of land and its use.