OPINION
Plaintiff-appellant, Elaine Didday, appeals a decision of the Clermont County Court of Common Pleas dismissing her action against defendants-appellees, Jeffrey and Mary Bradburn, to quiet title pursuant to R.C. 5303.01. We affirm the decision of the trial court.
In 1956, appellant purchased the parcel of real estate located at 4272 Taylor Road, in Batavia, Ohio. In 1960, the original home on the property was destroyed by fire. As a result, the home, a garage which stood near the western boundary of the property, and a fence which had been in place for twenty-four years next to the garage were torn down. That same year, appellant constructed a new home in a different location on the property. The lot was graded and eventually the public roadway in front of the property was widened from one lane to two lanes. In 1987, appellant constructed a new garage on the property. In 1989, appellant erected a fence along what she believed was the western boundary of her property.
In 1993, appellees purchased the neighboring parcel of property located at 4278 Taylor Road, in Batavia, Ohio. Appellees' property was surveyed pursuant to their mortgage contract. The survey, done in 1993, was not properly completed and the property was surveyed again in late 1993 or early 1994. As a result of the second survey, appellees discovered that the fence erected by appellant in 1989 was situated on their parcel of property.
Appellees confronted appellant with this information. Appellant, who had her property listed for sale, took no action. Appellees then informed appellant's listing agent of the controversy.
Appellant subsequently brought suit to quiet title, claiming that she had gained ownership of the disputed .0219 acre, triangular-shaped piece of property through adverse possession. Appellant claimed that the disputed parcel, although part of appellees' titled property described in their deed, had been occupied by appellant and her predecessors in title in an open, notorious, exclusive, adverse, hostile and continuous manner since 1936.
In particular, appellant claimed that the original garage and driveway partially stood on the disputed property, and that the fence next to the garage demarcated the boundary between the property. Appellant further maintained that after the removal of original garage, she fenced, mowed, and landscaped the disputed property. Appellant asserted that the 1989 fence was erected in the same position as the fence which stood on the property prior to 1960, and that the fence line indicated the boundary between the properties.
Appellees contested these claims, and the trial court held a hearing on the matter on October 5, 1998. In an entry dated April 20, 1999, the trial court found that appellant had failed to prove that she had gained title to the disputed property through adverse possession. Appellant appeals, raising three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN FINDING THE PLAINTIFF FAILED TO ESTABLISH OWNERSHIP OF THE DISPUTED .0219 ACRES OF REAL ESTATE OCCUPIED BY PLAINTIFF BY CLEAR AND CONVINCING EVIDENCE OF ADVERSE POSSESSION; SUCH FINDING BEING CONTRARY TO THE WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL.
In her first assignment of error, appellant contends that once she has established title to the disputed property through adverse possession, the burden shifts to appellees to contradict her title with clear and convincing evidence.
The burden of proof in a quiet title action rests with the complainant as to all issues which arise upon essential allegations of the complaint. Duramax v. Geauga Cnty. Brd. OfCommissioners (1995), 106 Ohio App.3d 795, 798. As appellant brought the present action to quiet title, it is incumbent upon her to first establish ownership through adverse possession.
Each case of adverse possession turns upon its own particular set of facts. Monteith v. Twin Falls United Methodist Church
(1980), 68 Ohio App.2d 219, 224. In order to acquire title to land by adverse possession, a party must establish by clear and convincing evidence that possession of the land was open, notorious, exclusive, adverse, hostile, and continuous for more than twenty-one years. Grace v. Koch (1998) 81 Ohio St.3d 577,579; R.C. 2305.04. The legal titleholder has the benefit of a strong presumption that he is the legal owner. DeBruller DeBruller v. Nause (Dec. 16, 1981), Clermont App. No. 987, unreported. Therefore, the burden of establishing the elements necessary to acquire ownership by adverse possession rests heavily upon a person claiming such ownership. Id. Adverse possession must be proved and will not be presumed. Binkley v. Strawser, 1931 Ohio Misc. Lexis 1111, at *3 (Nov. 16, 1931), Pickaway App., unreported.
If a trial court's decision regarding a claim of adverse possession is supported by some competent, credible evidence going to all of the essential elements of the case, it will not be reversed by a reviewing court as being against the manifest weight of the evidence. Rader v. Brock (Oct. 13, 1997), Preble App. No. CA97-03-007, unreported, citing C.E. Morris v. Foley Construction
(1978), 54 Ohio St.2d 279, 280. An appellate court must be "guided by a presumption that the findings of the trier of fact were indeed correct." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80.
 Appellant contends that her claim for adverse possession dates back at least to 1936, at which time a chain link fence divided the two properties. This fence was in place when she purchased the property in 1956, and stood until 1960 when it was taken down by appellant and her husband. Appellant contends that the fence which she erected in 1989 stands in the same position as the older fence, occupying .0219 acres of appellees' property.
 With the passage of some fifty years, appellant's witnesses could provide only vague testimony regarding the location of the fence which stood from 1936 to 1960. Emil Ankermiller, who lived on the property from 1945 to 1956, testified that the new fence was situated within a ten foot span of where the old fence stood, although with the many physical changes to the property, he could not be certain. Likewise, the testimony of Sammie Lou Daniell, appellant's sister-in-law who lived at the property from 1936 to 1945, was at best approximate in describing the locations of the fence and garage. Appellant herself could only estimate the location of the old fence and garage in relation to the present day structures.
Both parties presented a multitude of photographs representing the property from the 1940s to the present. However, with the many changes in the physical landscape of the property, as well as the relocation of the structures, the trial court found that it was nearly impossible to draw a correlation between the site of the old fence and the new fence. Absent a definite determination of the location of the first fence and the land it occupied, the trial court was unable to find that the disputed land was occupied by appellant and her predecessors in title from 1936 to 1960.
Between 1960 and 1989 there was no fence dividing the properties. Appellee, Jeff Bradburn, who lived across the street from appellant from 1972 to 1985, testified that there was no visible boundary between the properties during this time. Appellant testified that she mowed the disputed property, did some landscaping, including planting flowers and a tree, and generally used the land as part of her yard. However, mowing grass or engaging in landscaping is insufficient to establish adverse possession. Gehron v. Petry (Jan. 23, 1995), Preble App. No. CA94-04-008, unreported, at 3, citing Meyer v. Pockros (1924),18 Ohio App. 506, 511.
In 1989, appellant erected a new fence on the disputed property. Setting property off by a fence has been found to be sufficient to support a claim of adverse possession. See Rader v.Brock (Oct. 13, 1997), Preble App. No. CA97-03-007, unreported, at 6 (citations omitted). It seems uncontested that the new fence was regarded by appellant and her neighbors as the boundary between their properties. The fact that the appellant and her neighbors mistakenly believed that the fence represented the boundary between the lots is immaterial as intent is not necessary to establish a claim of adverse possession. Id. at 7-8. Nevertheless, appellant's possession and use of the disputed land since 1989 falls short of the twenty-one year requirement to establish title by adverse possession. R.C. 2305.04.
We find that the trial court's decision dismissing appellant's claim for failing to establish adverse possession is supported by competent and credible evidence. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRONEOUSLY FAILED TO QUIET TITLE IN THE DISPUTED .0219 ACRES OF REAL ESTATE IN FAVOR OF PLAINTIFF AS THE LOCATION OF MONUMENTS SHOWS THE LINE PLAINTIFF CLAIMS IS THE PROPER BOUNDARY LINE.
In her second assignment of error, appellant argues that the boundary between the two properties should be determined by the pins and stakes set over the past forty years by various surveyors. Appellant contends that, even if erroneously placed, pins placed by an original survey establish the boundary between parcels of property.
During opening statements before the trial court, appellant's counsel stipulated that "[t]he disputed land actually falls within the legal description of the defendants' property." Appellant's counsel reiterated this point, stating that "the triangular piece of property, although it be enclosed by our fence, is, in fact, a part of the legal description for the Bradburn property."
A valid stipulation is binding upon the parties and the court. Burdge v. Bd. of Cty. Commrs. (1982), 7 Ohio App.3d 356,358; Provident Sav. Bank Trust v. Western Southern Life Ins.Co. (1931), 41 Ohio App. 261, 264. At no time during the trial did appellant attempt to rescind the stipulation or otherwise argue that the legal boundary ran along a line established by an alternate set of surveyors' pins. Rather, appellant's position was that she gained title to the disputed property through adverse possession.
The parties' reliance on this stipulation is evidenced by the fact that neither side presented testimony as to the position or placement of the surveyors' pins. Neither party called a surveyor to testify, and no evidence was offered which would indicate the origin or significance of the surveyors' pins. Although various surveys of the parcels of property were offered into evidence, the survey labeled Plaintiff's exhibit 1 indicates that existing pins were found which would verify the boundaries claimed by both appellant and appellees.
Based on the parties' stipulation, the issue before the trial court was whether appellant had gained possession of the disputed property through adverse possession. Appellant is bound by the stipulation, and cannot now contest the trial court's reliance on the stipulation. Provident at 264. We find appellant's second assignment of error to be without merit.
Assignment of Error No. 3:
 THE TRIAL COURT ERRONEOUSLY FAILED TO QUIET TITLE IN THE DISPUTED .0219 ACRES OF REAL ESTATE IN FAVOR OF PLAINTIFF CONTRARY TO CLEAR EVIDENCE OF ACQUIESCENCE IN THE PLAINTIFF'S PROPERTY LINE BY DEFENDANTS AND THEIR PREDECESSORS IN TITLE.
In her final assignment of error, appellant contends that the fence line established the boundary between the properties due to the acquiescence of appellees and appellees' predecessors' in title in the fence as the boundary.
The trial court found that appellant failed to establish the location of the fence which stood from 1936-1960, that no delineated boundary existed between 1960 and 1989, and that the new fence erected in 1989 had not been in place long enough to establish appellant's claim of adverse possession. As stated in the resolution of appellant's first assignment of error, we find that this decision is supported by competent and credible evidence. Accordingly, the acquiescence of appellees' and appellees' predecessors in title to the fence as a boundary is not relevant to appellant's claim of adverse possession. Appellant's third assignment of error is overruled.
VALEN and KERNS, JJ., concur.
KERNS, J., retired, of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.