OPINION
Defendant-appellant Eagleson's, Inc. appeals from the August 1, 2001, Judgment Entry of the Guernsey County Court of Common Pleas awarding title by adverse possession to a parcel of property to plaintiffs-appellees Gilbert Wetzler and Mary Wetzler.
 STATEMENT OF THE FACTS AND CASE
On August 9, 1999, appellees filed an action against appellant seeking to quiet title to.211 acres of land under a theory of adverse possession. Appellant, on August 24, 1999, filed an answer of denial to appellees' complaint.
The disputed .211 acres is located in the northeast corner of the intersection of Country Club Road with Pioneer Road, approximately one mile west of Byesville, Ohio. While appellees own property immediately north of such land, appellant is the deed owner of the disputed property and the property south of Pioneer Road. Prior to 1908, a road (now known as Pioneer Road) divided the property in appellant's chain of title from the property in appellees' chain of title. However, in 1908, the road was moved a couple of feet south. As noted by the trial court in its August 1, 2001, Judgment Entry, "thereafter, both the owners in Plaintiffs Wetzlers' chain of title and Defendant Eagleson's chain of title continued to use the original deed descriptions in their deeds" without reference to the fact that the location of Pioneer Road had been changed.
After appellant's motion for summary judgment was denied by the trial court, which found that there were genuine issues of material fact, a bench trial was held before the trial court on July 16, 2001. As memorialized in a Judgment Entry filed on August 1, 2001, the trial court granted appellees' complaint for adverse possession "conditioned upon Attorney for the Plaintiff submitting to the Court. . . . an appropriate legal description. . .". Subsequently, after a legal description was provided to the trial court, a final appealable order was filed on August 28, 2001.
Appellant now raises the following assignments of error:
ASSIGNMENTS OF ERROR
 THE 21 YEAR TIME FRAME FOR ADVERSE POSSESSION WAS NOT MET BY APPELLEE.
 II. THE DEED AND TAX RECORDS PROVE OWNERSHIP OF THE PROPERTY BY APPELLANT.
In the case sub judice, there is neither a transcript of the bench trial nor an App.R. 9(C) statement of the evidence settled and approved by the trial court. Appellant, in his docketing statement, indicated that a full transcript of the proceedings was to be filed. However, in a file memo dated September 5, 2001, the Court Reporter stated as follows: "Received voice mail this date from Joe Eagleson[1] stating he no longer needed or wanted the transcript in the above case;. . .". To date, no transcript has been filed.
As a consequence we are directed, in our review of the judgment of the trial court, to the Separate Findings of Fact and Conclusions of Law executed by the trial court. Because of appellant's failure to file a transcript, we must accept the facts as found by the trial court. Knappv. Edwards Laboratories (1980), 61 Ohio St.2d 197.
 I
Appellant, in its first assignment of error, argues that appellees' adverse possession claim lacks merit since appellees did not meet the 21 year time frame for adverse possession.[2]
To acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years. Grace v.Koch (1998), 81 Ohio St.3d 577, 579. It "is the visible and adverse possession with an intent to possess that constitutes [the occupancy's] adverse character." Humphries v. Huffman (1878), 33 Ohio St. 395,402. In addition, the occupancy "must be such as to give notice to the real owner of the extent of the adverse claim." Id. at 404. Actual
notice of adverse possession on the part of the title owner is not required since "[t]he owner is charged with knowledge of adverse use when one enters into open and notorious possession of the land under a claim of right." Vanasdal v. Brinker (1985), 27 Ohio App.3d 298, 299. In order to establish the necessary twenty-one year period, a party may add to his own term of adverse use any period of adverse use by prior succeeding owners in privity with one another. Zipf v. Dalgarn (1926),114 Ohio St. 291. The chain of adverse use by prior succeeding owners ending with the person claiming title by adverse possession, known conceptually as "tacking," may not be broken, however. Id.
As is stated above, appellant specifically contends that the twenty one year period for adverse possession has not been established by appellees. The trial court, in its August 1, 2001, Judgment Entry, stated as follows:
 5) The Court concludes as a matter of law that the evidence clearly establishes that the prior property owners in Plaintiffs' [appellees'] chain of title used openly and notoriously the property on the side of the road on which they lived, even when continuing to use the original description in their deeds with no deed reference that the Byesville/Claysville Road (now referred to as "County Road 42" or "Pioneer Road") had been changed. This commenced from at least 1930 until this dispute arose in 1993.
The prior property owners in appellees' claim of title are Mary Lou McDaniel, Loretta Perkins and Charles Perkins.
In support of its above conclusion, the trial court, in its entry, made the following findings of fact that, pursuant to Knapp, supra., this Court must accept:
 9) The Court finds that the Plaintiffs [appellees] purchased their 4.462 acres on May 3, 1991. The Plaintiff, Gilbert H. Wetzler, was familiar with the property as he had visited it as a boy and he viewed the property with Dean Perkins (who had — with his family — lived on the property in the 1930's and whose brother and sister-in-law (Charles Loretta Perkins) had owned and lived on the property from 1957 to 1990).
The Court finds that Mr. Dean Perkins testified that:
 A) The fence lying on the southern part of the disputed property had always run along Pioneer Road and he had pointed this out to the Plaintiff when Plaintiff and he had viewed the property.
 B) He and his family had lived on the property from 1930 to 1935; and the fence along the north side of Pioneer road had always been used as the south property line.
 C) His brother, Charles Perkins, drilled the water well on the disputed property in 1965.
 D) He helped his sister-in-law by servicing the well after his brother died in 1982, and he continued to do so until she died in 1990.
 E) There was no claim to ownership to the disputed area of land by anyone else while his brother and sister-in-law had owned the property, nor when his parents had lived there in the 1930's.
 F) His brother had given Roger Montgomery permission to pasture his land and later gave Cliff Eagleson (the Father of Joe Eagleson) permission to pasture horses.
. . .
 The Court finds that Mary Lou McDaniel[3] testified that:
A) She was the niece of Loretta Perkins.
 B) No one else had made claim to the property while the Perkins had owned it since 1957.
 C) She issued a quit claim deed to the Wetzlers as a deed of correction after the property line dispute arose.
. . .
 21. The Court finds that Wetzler had owned the property to the north which he had purchased from Mary Lou McDaniel in 1991. The Court finds no confrontation as to the ownership of the disputed property in question arose until November 1993, after the Eaglesons received a survey . . .
The trial court also found that appellee Gilbert Wetzler had brush-hogged and graded the disputed .211 acres since he purchased his property in 1991.
We find that, upon the facts found by the trial court, there was clear and convincing evidence that appellees met the twenty one years for adverse possession. As evidenced by the above findings of fact, appellees and their predecessors had adversely possessed the disputed property for over twenty-one years by, for example, drilling a water well on the same in 1965 and servicing the same and by brush-hogging and grading the .211 acres. As concluded by the trial court, this adverse use of the .211 acres commenced from at least 1930, when Charles and Loretta Perkins owned the land now owned by appellees, until 1993[4]. Any mistake by appellant regarding the true property lines is not material to a demonstration of adverse possession. Swinson v. Mengerink
(Dec. 3, 1998), Van Wert App. No. 15-98-10, unreported.
Appellant's first assignment of error is, therefore, overruled.
 II
Appellant, in its second assignment of error, argues that the deed and tax records prove appellant's ownership of the disputed .211 acres. In essence, appellant maintains that the deed and accompanying tax bills indicating that appellant is the deed owner of the .211 acres are binding and conclusive as to ownership.
As is stated above, the occupancy of an alleged adverse possessor "must be such as to give notice to the real owner of the extent of the adverse claim." See Humphries, supra. (Emphasis added). Thus, as noted by appellees in their brief, if the deed and tax bills for the .211 acres were binding and conclusive as to appellant's ownership of the same, "the doctrine of adverse possession would be practically moot." Thus, even though appellant is the deed owner of the .211 acres, appellees can still obtain title to the same through adverse possession.
Appellant's second assignment of error is, therefore, overruled.
Accordingly, the judgment of the Guernsey County Court of Common Pleas is affirmed.
By EDWARDS, J., GWIN, P.J. and WISE, J. concurs
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Guernsey County Court of Common Pleas is affirmed. Costs to appellant.
[1] Joe Eagleson is the sole officer of appellant Eagleson's, Inc.
[2] Appellant, in its brief, specifically argues that "[t]he controversy between the parties over the disputed property arose in 1993 which is only 8 years to date". While the trial court, in its August 1, 2001 Judgment Entry, found that the twenty one year period for adverse possession in this case "must commence on Thanksgiving Day, 1993, when the dispute first arose between Joe Eagleson and Gilbert Wetzler", it is clear that the trial court was counting backward from Thanksgiving Day, 1993, to determine whether appellees adversely used the subject property for a period of twenty-one years. As noted by the trial court, the dispute in this matter did not arise until after Joe Eagleson obtained a survey in November of 1993.
[3] Mary Lou McDaniel acquired title to the property now owned by appellees in 1990.
[4] We find that the case sub judice can be analogized to Finley v.Flor (Dec. 19, 1991), Cuyahoga App. No. 59602, unreported. In Flor, one of the plaintiffs purchased property at a Sheriff's Sale in 1986. After a survey conducted in 1986 showed that the defendants' garage addition encroached on the plaintiffs' lot, the plaintiffs filed a complaint for injunctive relief against the defendants. The defendants, in turn, filed a counterclaim to quiet title to the property occupied by the addition to their gargae.
After the trial court ruled in favor of the defendants on their counterclaim to quiet title, the plaintiffs appealed. The Court of Appeals held that the defendants had adversely possessed the subject property for the requisite period of 21 years. In so holding the court of appeals noted that "[p]laintiffs obtaining title to the property in 1986 and thereafter obtaining a survey did not contest plaintiffs' claim of right until after the parcel of property had been subject to adverse and hostile possession for a period of 21 years." Id. at 3. Likewise, in the case sub judice, appellant did not contest appellees' claim of right until after the subject property had been subject to adverse and hostile possession for over 21 years.