HUBER et al., Appellees,

v.

CARDIFF et al., Appellants.

[Cite as *Huber v. Cardiff,* 186 Ohio App.3d 384, 2009-Ohio-3433.]

Court of Appeals of Ohio,
Second District, Miami County.

No. 08–CA–24.

Decided July 10, 2009.

McCullouch, Felger, Fite & Gutmann Co., L.P.A., and Frank T. Patrizio, for appellees.

Tomb, Roberts & Bucio, L.L.P., Jeremy M. Tomb, and Scott A. Kelly, for appellants.

BROGAN, Judge.

{¶ 1} In August 2006, Carl Huber filed an application with the city of Piqua, Ohio, for a special-use permit to operate an automobile repair shop on his property at 715 South Roosevelt Avenue. The property at the time was zoned for residential use, but Huber was seeking to expand his nonconforming use of the property. Since Huber intended to build a new building on the property, the city of Piqua required a site plan, and thus a site survey was performed. The survey revealed that a small strip of property inside the fence separating the Roosevelt property from the property at 720 Adams Street actually belonged to the owner of the Adams Street property, namely, appellant Penny Cardiff.

{¶ 2} Carl and Shirley Huber filed a quiet title action against Cardiff in the Miami County Common Pleas Court for purposes of establishing that the Hubers owned the disputed strip of land by virtue of adverse possession. When the trial court ruled in the Hubers' favor, Cardiff appealed that judgment to us.

{¶ 3} Evidence at the bench trial established that Louie Havenas purchased the Roosevelt Avenue property in 1978, and a wooden fence ran along the rear of the property when he purchased it. The fence line encompassed a strip 45 feet long by 20 feet wide that was carried on the County Engineer's Map as belonging to the abutting property to the rear at 720 Adams Street, now owned by Penny Cardiff. Havenas testified that he believed that the wooden fence at the rear of his property marked his property line. Havenas testified that he sold the Roosevelt Avenue property to his cousins, Bud and Dan Felver, in April 1979. The Felvers ran a construction company on the property. In 1993, the Felvers transferred it to Claude and Willa Adams. Claude ran a car lot on the property for a period of time. The Adamses sold the property to Carl and Shirley Huber, who had been renting it from them since 1998. At all times, the wooden fence separated the Roosevelt and Adams Street properties. Huber testified at trial that he had observed Claude Adams repair the wooden fence when needed and that he maintained the disputed strip of property in the ten years preceding the lawsuit.

{¶ 4} Nelson Watren testified that he owned the 720 Adams Street property from 1979 to 2003 and used the property as a rental. He testified that his father owned the property before him, and the fence in question had been in existence since at least 1960. He testified that he believed that his rear property line ended at the wooden fence. He testified that he thought the property owners of 715 South Roosevelt owned the now disputed property.

{¶ 5} Appellant, Penny Cardiff, testified that she began renting the Adams Street property in 1995 from Nelson Watren. She testified that she was under the impression that the property line for the Adams Street property was the fence line in question. She testified that she did not learn that the fence line did not mark the Adams Street property line until this legal dispute arose. She testified that she never mowed the grass on the Roosevelt side of the fence because cars were parked there. She testified that she had to repair the fence on a few occasions to prevent it from falling over on her cars. Lastly, she testified that Tim Watren had told her that sometimes when the Roosevelt property was vacant, he and his wife would clean up the property of debris.

{¶ 6} In determining that the disputed land belonged to the Hubers by virtue of adverse possession, the trial court noted that the disputed property had been fenced in for more than 21 years, and the predecessors in title had used the disputed property as their own by parking junk cars on it and putting debris on it. The court held that the Hubers did not forfeit their right to claim adverse possession because predecessors in title may have used a building on the property in violation of zoning.

{¶ 7} In her first three assignments of error, Cardiff argues that the trial court's judgment is against the manifest weight of the evidence. Specifically, she argues that the Hubers and their predecessors did not establish they had used the property to a degree sufficient to constitute an actual and continuous use of the property. She argues that the Roosevelt property was empty prior to 1998 and that it merely contained some bushes, debris, and a fence. She argues that parking cars on the property occasionally and maintaining the fence one time is not sufficient use to establish actual possession, which is required to establish an adverse-possession claim. She argues that there was no evidence as to who erected the wooden fence separating the Roosevelt and Adams Street properties and that the Hubers did not establish their adverse-possession claim because the Roosevelt property was vacant during some of the required 21–year period. Cardiff also argues that the trial court should have found that the 21–year period of continuous possession was interrupted by the Watrens' entry into the Roosevelt property to clean up debris and to maintain the bushes on the property.

{¶ 8} The Hubers argue that we should overrule Cardiff's first three assignments because there is sufficient evidence in the record to support the trial court's judgment. They note that Nelson Watren, the former owner of the Adams Street property, testified that the wooden fence was in existence at least in the 1960s, and he always thought that his property line ended at the fence line. Secondly, the Hubers argue that it does not matter that it could not be determined who erected the fence or that the property may not have had a tenant residing thereon as long as the owner exercised dominion and control of the property.

{¶ 9} To acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession, and open, notorious, continuous, and adverse use for a period of 21 years. *Grace v. Koch* (1998), 81 Ohio St.3d 577, 692 N.E.2d 1009.

{¶ 10} It has been held that "when a party erects a fence and treats the land on one side of the fence as his own, there is generally little question that possession is exclusive and use of the land is open, notorious and adverse to the interests of the record owner." *Glaser v. Bayliff* (Jan. 29, 1999), Miami App. No. 98CA34, 1999 WL 34709, *3, citing *Rader v. Brock* (Oct. 13, 1997), Preble App. No. CA 97–03–007, 1997 WL 632843, at 3.

{¶ 11} In *Evanich v. Bridge*, 119 Ohio St.3d 260, 2008-Ohio-3820, 893 N.E.2d 481, the Ohio Supreme Court held that title may be acquired through adverse possession irrespective of any question of motive or of mistake in adversely possessing the property. The court held that it is the visible and adverse

possession, with an intent to possess, that constitutes its adverse character and not the remote motives or belief of the possessor.

{¶ 12} The ultimate test for adverse possession is the exercise of dominion over land consistent with actions that a true owner would take. Evidence of *use* is admissible because it is ordinarily an indication of *possession*. It is *possession* that is the ultimate fact to be ascertained. Exclusive dominion over land is the essence of possession, and it can exist in unused land if others have been excluded therefrom. A fence is the usual means relied upon to exclude strangers and establish the dominion and control characteristic of ownership. *Wood v. Nelson* (1961), 57 Wash.2d 539, 540, 358 P.2d 312.

{¶ 13} One court has held that placement of a fence within one's boundary line does not lead to the relinquishment of ownership of lands outside the fence without an additional showing that those lands outside the fence have been used by the neighboring landowner under claim of ownership for the requisite time. *Martin v. Kozuszek* (1984), 216 Neb. 705, 345 N.W.2d 26.

{¶ 14} A judgment is not against the manifest weight of the evidence if there is some substantial and probative evidence to support it. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. Credibility determinations are primarily for the trial court to decide. In this matter, it is undisputed that the fence that separated the Hubers' and the Cardiff properties has been there continuously since 1960. Although no one testified as to who erected the fence, it is clear that the Hubers and the predecessors in title treated the property inside the fence line as their own. Nelson Watren, who owned the Adams Street property since 1979, thought that the fence line marked the property boundary line, as did Penny Cardiff herself. Louie Havenas testified that the Felvers operated a construction company on the Roosevelt Avenue property from 1979 until 1993, when they sold it to the Adams family. Claude Adams then ran a car shop on the property for a time, and then the Hubers acquired the property and maintained it until the lawsuit was initiated. Cardiff admitted that she did not mow the grass outside the fence line because cars apparently belonging to her neighbor were parked up against the fence line.

{¶ 15} Regardless of who erected the fence, there was evidence that the Roosevelt property was used by the owners of that property right up to the fence line bordering the Adams Street property. The evidence supports the trial court's finding that the Hubers had established their right to ownership of the disputed strip of land by adverse possession and that they had established that right by clear and convincing evidence. The first three assignments of error are overruled.

{¶ 16} In her last assignment, Cardiff argues that the Hubers should not be entitled to assert ownership by adverse possession of real estate that they and their predecessors used illegally. Specifically, Cardiff notes that Huber was notified in October 2006 that the Planning Commission declined to act on his request because the residential zoning designation of the property was incompatible with the uses that had existed at the Roosevelt Avenue property for many years. Zoning Supervisor Christopher Schmeising informed Huber that because of the business use of the property over the years, the commissioners would entertain a rezoning request to General Business zoning.

{¶ 17} The Hubers argue that no court in Ohio has ever held that a party asserting a claim for adverse possession cannot prevail if he used the property in violation of zoning. We could find no Ohio case asserting that proposition. Cardiff has asserted illegal use of the property as a defense to the Hubers' adverse-possession claim. Cardiff did not establish when the Roosevelt property was zoned residential. The property may have been exempt from zoning because of its prior use. There is no evidence that the city of Piqua ever attempted to prosecute anyone for operating a business on the Roosevelt property from 1960 to the present despite evidence that several different businesses were operated on the property by several different property owners. There is some evidence that the property owners were entitled to grandfather status. The fourth assignment of error is overruled.

{¶ 18} The judgment of the trial court is affirmed.

Judgment affirmed.

FROELICH and HARSHA, JJ., concur.

WILLIAM H. HARSHA, J., of the Fourth Appellate District, sitting by assignment.