WINTERS NATIONAL BANK AND TRUST COMPANY, EXR., ET, PLAINTIFF, *v.* RIFFE ET, DEFENDANTS.

Probate Court, Montgomery County.

No. 158229-53.   Decided January 11, 1963.

*Messrs. Lair, Herkins, Lair & Wiseman,* for plaintiff.

*Messrs. Turner, Wells, Granzow & Spayd,* for defendant, Florence N. Graf.

*Mr. Mathias H. Heck,* for defendant, Sammie S. Riffe.

(ZIEGEL, J., of Preble County, acting Probate Judge by assignment.)

ZIEGEL, J. Testator's surviving spouse has exercised her statutory right to take under the statute of descent and distribution, rather than under the will of her deceased consort. As a result of such election, the executor, being in doubt as to how the assets of the estate are to be distributed, has brought this action in declaratory judgment for instructions.

Item II of testator's will provides: "I give and bequeath all of the stock that I own, issued by American Telephone & Telegraph Company, at the time of my death, to THE WINTERS NATIONAL BANK & TRUST COMPANY of Dayton, Ohio, as Trustee, in trust nevertheless, for the use and benefit of my good friend and business associate, FLORENCE M. GRAF. . . ." In Item III, he gave, devised, and bequeathed the balance of the rest and residue of his estate to the same trustee for the use and benefit of his wife. The trustee was directed to pay the income from this trust to the widow in quarterly installments, with power to invade the principal if necessary. Upon the death of the wife, the trustee was directed to hold the balance of the principal and any undistributed accrued income as a scholarship fund for certain of testator's relatives, the same to be held for ten years or until the fund is exhausted. At the end of the ten year period any balance remaining is to be distributed to the Dayton Museum of Natural History. The Will also provided that at the death of Florence Graf, the principal of that fund was to pass under Item III. Testator had no children.

While the executor seeks instructions on eight separate matters, the principal issue revolves around Item II, counsel for the executor submitting and counsel for Florence M. Graf contending that the widow's election should not in any way affect that item. The widow's guardian asserts that his ward is entitled to her share out of the AT & T stock as well as out of the residuary assets.

The key to resolving this controversy rests on the case of *Barlow v. Winters National Bank & Trust Co.*, 145 Ohio St., 270, 61 N. E. (2d), 603, which held in paragraph 1 of its syllabus that "Where the relict of a deceased husband elects not to take under his will, she takes her share not by way of a distributive share in money, but by way of inheritance as though

it came to her from her deceased husband as an inheritance under Section 10503-4, General Code (now Section 2105.06, Revised Code), limited by the provisions of Section 10504-55, General Code (now Section 2107.39, Revised Code)." Section 2107.-39, Revised Code, provides that "if such spouse elects to take under. . . . (the statute of descent and distribution), such spouse shall take not to exceed one half of the *net estate*. . . ." In commenting on that section, Judge Hart, writing the opinion of the Supreme Court, pointed out that "the statute . . . . limiting the share which the relict of a deceased husband or wife may elect to take in the estate of such deceased husband or wife under the statute of descent and distribution, does not make such share one-half of the *net value* of such estate, but one-half of the net estate. Hence, there is nothing to indicate that the surviving spouse shall be paid a distributive share *in money* rather than one-half of the real estate and one-half of the net *personal estate* after the payment of debts."

Counsel contend that since the *Barlow case* was concerned only with real estate and the rentals therefrom, and since in that case there were no specific legacies as in Item II of the testator's will in the case at bar, the case should be limited to its facts and applied only to the small amount of real estate involved here. Neither the syllabus, as quoted above, nor its rationale, however, limits its rule to real estate. Further there is nothing in the statute of descent and distribution (Section 2105.06, Revised Code), nor in the election statute (Section 2107.39, Revised Code), that makes any distinction between real estate and personal property. If the law as pronounced in the *Barlow case* is valid with regard to real estate, it must likewise be applied with regard to personalty.

The situation, therefore, of a surviving spouse who elected not to take under her deceased consort's will is the same as if that deceased consort had died intestate. As far as she is concerned there is no will. She is not bound in any respects by any will, and her rights are the same as if she were an heir of an intestate.

Section 2105.06, Revised Code, the statute of descent and distribution, begins: "When a person dies intestate having title or right to any personal property or to any real estate or

inheritance in this state, such personal property shall be distributed and such real estate shall descend and pass in *parcenary*. . . ." Personal property is distributed and real estate descends and passes *in parcenary*—no distinction. An estate in parcenary, or in coparcenary, is defined as one which arises where several take by descent from the same ancestor as one heir, all coparceners constituting but one heir and having but one estate, and being connected by unity of interest and of title. 86 C. J. S., 361, par. 3. It is said that there is now no distinction between an estate in parcenary, and an estate as tenants in common. See 17 Ohio Jurisprudence (2d), 527, par. 198.

Thus, the interest of the electing surviving spouse here in the net personal estate, and each individual item thereof, as well as in the real estate, is that of a tenant in common: she has an undivided interest therein. This is what Judge Hart meant in the *Barlow case* when he stated, as quoted above, that the share of the electing surviving spouse is not "one-half of the *net value* of such estate, but one-half of the net estate." To deny in this case that Sammie Riffe, the surviving spouse, had any interest in the AT & T stock mentioned in Item II of decedent's will, and to require that her entire share of this estate be paid from the residue would be the same as reducing her interest to a money value, and would do violence to the positive wording of the statute as well as to the principle of law announced in the *Barlow case*.

It follows that The Winters National Bank & Trust Company, the executor nominated by decedent's will, is both an executor and an administrator. As to the electing surviving spouse who takes by way of an inheritance, not by legacy or devise, it is an administrator; but as to the other beneficiaries named in the will and to the creditors, it is an executor. The will still applies to that portion of the estate which does not belong to the electing surviving spouse. Thus, for example, if it is necessary to liquidate any items of personal property in order to acquire funds for the payment of debts, taxes, expenses of administration, etc., items not specifically bequeathed will be sold first. Section 2113.40 (B), Revised Code.

When the "net estate" is determined after the payment of

expenses of administration, fees, debts, widow's set off and year's allowance, and the Federal Estate Tax, *Davidson* v. *Trust Co.*, 129 Ohio St., 418, 2 Ohio Opinions, 404, 195 N. E., 845; *Campbell* v. *Lloyd*, 162 Ohio St., 203, 55 Ohio Opinions, 102, 122 N. E. (2d), 695, both the surviving spouse, who takes by way of inheritance, and the trustee here who takes a distributive share under the will, may receive distribution, either in cash or in kind, Section 2113.53, Revised Code, or may demand distribution, either in cash or in kind, Section 2113.54, Revised Code (see also Section 2113.40 (C), Revised Code), to the extent of their respective shares. While the interest of the surviving spouse here in the various items of personal property is an undivided one, if distribution in kind is in order, Section 2113.55, Revised Code, and the item sought to be distributed in kind, such as the shares of AT & T stock, is subject to division, her interest, as well as that of the other legatee, may then be set off by the Court in severalty—partitioned, as it were. If the item for which distribution in kind is sought, is not subject to division, and no agreement between the parties in interest can be reached, it may be ordered sold and the cash money obtained therefrom distributed, or under Section 2113.55, Revised Code, the court might make such other order as the situation required. This is not an unusual situation, and may occur in any intestacy or even where a will leaves an indivisible item to more than one person.

Obviously, the conclusion hereinabove reached, standing along, cuts the corpus of the trust created in Item II of decedent's will for the benefit of Florence Graf in half. As a "disappointed legatee," is the trustee entitled to anything to compensate for its loss, and if so, from what source? It is well settled that a surviving spouse who elects to take under the statute of descent and distribution cannot also take under the will and keep the provisions therein made for her. This renounced provision is ordinarily used to compensate the disappointed legatees. See 56 Ohio Jurisprudence (2d), Wills, §846, and cases cited thereunder, particularly *Jennings* v. *Jennings*, 21 Ohio St., 56.

Item III of the will created a trust for the benefit of decedent's wife for life, with the income from this trust to be paid to her in regular installments, and the trustee being au-

thorized to invade the principal in an emergency. By taking under the law the widow renounced these provisions. Prior to 1953 it appears that it would have been possible to sequester this life interest of the refractory donee to compensate the "disappointed legatee." *Kenyon College* v. *Cleveland Trust Co.*, 130 Ohio St., 107, 3 Ohio Opinions, 141, 196 N. E., 784. While generally under the common law a remainder interest took effect upon the termination of an intervening life estate, which was held to be the case where a surviving spouse who had been given a life interest under the deceasd consort's will elected not to take under that will, the doctrine was a rule of construction based upon the presumed intention of the testator. Where it appeared that testator's intention would be defeated by applying that doctrine of acceleration, it was not applied and the life interest was sequestered. *Holdren* v. *Holdren*, 78 Ohio St., 276, 85 N. E., 537. In 1953, however, the election statute, Section 2107.39, Revised Code, was amended to include the following: ". . . . unless the will shall *expressly provide* that in case of such election that shall be no acceleration of remainder or other interest bequeathed or devised by the will, the balance of the net estate shall be disposed of as though such spouse had predeceased the testator." The will in question does not expressly provide anything of the sort. The scholarship trust fund for certain of testator's relatives provided for in Item II to take effect upon the death of the wife and to run for ten years or until the fund is exhausted now takes effect upon her election. Therefore, sequestration of this life interest as such in order to compensate the "disappointed legatee" is not possible.

Counsel contend that the uncompensated loss resulting from the election to take against the will should fall upon a residuary estate in preference to the specific legacy, citing in support *Dunlap* v. *McCloud*, 84 Ohio St., 272, 95 N. E., 774; *National Bank* v. *Linn* (Prob. Ct., Tuscarawas County), 22 Ohio Opinions, 195. The question in both of these cases, however, concerned which part of the assets of the decedent's estate should be used to pay the electing surviving spouse her share. They proceeded on the now erroneous assumption that a renouncing spouse "does not take an intestate share in the same manner as if the de-

cedent had left no will, but that such spouse has a distributive share equal to one half of (or one-third of, as the case may be) the 'net estate.' " *National Bank* v. *Linn, supra,* at pg. 197. In *Dunlap* v. *McCloud, supra,* for example, the Supreme Court held that where a surviving spouse elects not to take under a will, she must be compensated from undevised realty, before resorting to realty that is devised, a point of view that is definitely contrary to *Barlow* v. *Bank & Trust Co., supra.* While Supreme Court in the *Barlow case* did not refer to the *Dunlap case,* it must be considered that that case was overruled.

In the case at bar, on the authority of the *Barlow case,* it has already been decided in the fore part of this opinion that the surviving spouse takes an undivided interest in all of the assets of this estate available for distribution, both real and personal. At this stage of the proceedings, therefore, the question is not whether the surviving spouse shall be paid her share from the residue, but rather whether the residue trust created in Item III of testator's will must contribute to the loss already sustained by the specific trust created in Item II.

Except for some cases decided prior to the *Barlow case,* and upon a theory rejected by that case (see for example, *Kenyon College* v. *Cleveland Trust Co., supra),* no authority has been found and none has been cited authorizing any kind of contribution in a case like that at bar. The statute on contribution, Section 2107.54, Revised Code, covers only that situation where "real or personal property, devised or bequeathed, is taken from the devisee or legatee for the payment of a *debt* of the testator." As pointed out, the election of a surviving spouse to take against the will creates a right of inheritance, not a debt. Further, that statute anticipates a situation in which real or personal property is taken from one legatee or devisee for the payment of a debt of a testator, while the property bequeathed or devised to other legatees or devisees is left intact. Therefore, the statute in such a case provides that "the *other* devisees and legatees must contribute their respective proportions of the loss to the person from whom such payment was taken so that the loss will fall equally on all the devisees and legatees to the value of the property received by each of them." Here, since the electing surviving spouse takes by way of inheritance she receives an undivided interest in all of the

distributable property of the estate, and thus the loss does fall equally on all the devisees and legatees.

The case of *Blackford* v. *Vermillion*, 107 Ohio App., 26, 7 Ohio Opinions (2d), 350, 156 N. E. (2d), 339, answers the contribution question fully. In that case the testatrix in Item III of her will directed that a specific farm be sold and the proceeds divided among her named grandchildren. In Item IV she directed that the rest and residue of her property, both real and personal, be sold and the net proceeds divided among her named children. Her surviving spouse elected to take under the statute of descent and distribution. The question raised was whether the legacies to the children under Item IV (the residue) alone must be reduced to bear the burden of the elective share of the surviving spouse, or whether the legacies to the grandchildren under Item III (a specific bequest) must also be reduced proportionately. In deciding that Item III must also be reduced proportionately, the Hancock County Court of Appeals followed the *Barlow case, supra,* holding that the electing surviving spouse took an undivided interest in the real estate, and extended the *Barlow case,* as has been done here, by holding that the electing surviving spouse (pg. 30) "was further entitled, upon distribution of said estate, to an undivided one-third interest in and to all the personal property of the estate (including profits and income from said personal property and profits and income from the other undivided two-thirds interest in and to the real estate received after the death of testatrix)."

That Court then continued: "This leaves available to the executor only an undivided two-thirds interest in the real estate described in Item III to be sold to satisfy the legacies to the grandchildren, and thereby serves to reduce the amount which said legatees would have received had the surviving spouse elected to take under the will. It also leaves available to the executor only an undivided two-thirds interest in the balance of the . . . . property . . . . remaining after the payment of all debts and charges against the estate to go toward the satisfaction of the residuary legacies to the children named in Item IV and thereby serves to reduce the amount which said children would have received had the surviving spouse elected to take under the will." Interpolating here, there is thus only an un-

divided one-half interest in the AT & T stock left for the executor to satisfy the trust created in Item II of the instant testator's will and only an undivided one-half interest in the rest and remainder of the property to satisfy the trust created in Item III of his will.

Concluding, the Court in *Blackford* v. *Vermillion, supra,* stated its rule of law as follows: "It is our opinion, in the absence of a showing that the testator intended that the effect of an election of a surviving spouse to take against the will should be borne to the contrary, that when the election results in the executor being deprived of property, or interests in property, to such extent and in such manner, that the property or interests in property *remaining available* for distribution to different classes of legatees named in different items of the will would, if so distributed, cause the reduction resulting from said election to be borne equitably, but not necessarily equally or proportionately, between aid classes, distribution shall be made accordingly *without further adjustment or contribution* between the classes." In the case at bar, this Court does not find that there has been any showing that the testator intended the effect of the election to be borne any other way than pro rata. As indicated in the *Blackford case,* the creation of different classes of legatees is not such a showing.

The questions asked by plaintiff-executor in its petition may therefore be answered as follows:

1. The legacy under Item II is a specific one, but this is immaterial insofar as the surviving spouse is concerned.

2. The electing widow receives an undivided one-half interest in the net estate, both real and personal, net estate being that property available for distribution after the payment of debts, fees, and other charges and expenses of administration.

3. The bequest contained in Item II must be reduced to the extent of the widow's undivided one-half interest therein.

4. The other assets of the estate are not to be contributed to Item II to make up for that lost by the widow's election, since the other assets have also suffered their own pro rata loss.

5. Since the surviving spouse's interest is that of an undivided one-half in all property of the estate, whether liquid

or otherwise, a money valuation of that property at any particular time is immaterial. Her undivided one-half interest includes income received by the executor after its appointment.

6. The provisions of the trust created in Item III, providing educational benefits for certain persons, are accelerated by reason of the widow's election, and the ten year period for the application of such educational benefits begins to run as of the date of the widow's election.

7. Since, upon the widow's election, the balance of the net estate by statute (Section 2107.39, Revised Code), is "disposed of as though such spouse had predeceased the testator," those persons designated in Item III who are eighteen years of age or older on the date of the widow's election, or who become eighteen years of age during the ten year existence of this trust, are eligible to participate in its benefits. Incidentally, this question is being answered outside of the record since its answer concerns the trustee, not the plaintiff-executor.

8. Distribution shall be made to the widow in due course of events as in any other case where a person receives an intestate interest in an estate.

The foregoing conclusions are not only in accord with rational interpretation of the election statute, but are also in accord with ordinary reasoning. In the first place, the presumption exists that a testator in drawing his will possesses knowledge of existing statutes which may affect the devolution of his estate. *Flynn, Admr.* v. *Bredbeck*, 147 Ohio St., 49, 33 Ohio Opinions, 243, 68 N. E. (2d), 75. Therefore, whenever a married person makes a will, unless there is a valid antenuptial contract involved, that person does so with full knowledge that the surviving spouse may exercise her statutory right, renounce the will, and take under the statute of descent and distribution. The will should therefore be drawn accordingly, and it may logically be concluded that, in the absence of specific clarification in the will as to the disposition to be made of the estate in the event the surviving spouse renounces the will, the testator intended that his estate should pass as if the intestate share of the surviving spouse was not there. In the second place, it is my opinion that the term "disappointed legatee" as used in many of the cases is a misnomer. How can there be

any disappointment to anyone named in a will as legatee or devisee if the surviving spouse makes a choice which she is authorized by law to make, which right of choice is presumably well known to all concerned?

Counsel for the surviving spouse may prepare an entry in accordance with this opinion.