[Cite as *Pottmeyer v. Douglas*, 2010-Ohio-5293.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| Larry and Linda Pottmeyer, | : | Case No. 10CA7 |
| Plaintiffs-Appellees, | : | |
| v. | : | <u>DECISION AND<br>JUDGMENT ENTRY</u> |
| James Douglas and<br>Stephanie Lenhart, et al., | : | |
| | : | **Released 10/21/10** |
| Defendants-Appellants. | : | |
| | : | |

_____

<u>APPEARANCES</u>:

Michael D. Buell, BUELL & SIPE CO., L.P.A., Marietta, Ohio, for appellants.

Ethan Vessels, FIELDS, DEHMLOW & VESSELS, Marietta, Ohio, for appellees.

_____

Harsha, J.

**{¶1}** Stephanie Lenhart and James Douglas are appealing the order of the Washington County Court of Common Pleas that quieted title to a tract of their land and granted an easement for access to that tract in favor of Larry and Linda Pottmeyer.[1] Larry built a machinery shed and maintained a garden in the disputed tract beginning in the late 1960s and early 1970s. He also bulldozed and graveled an area for access to the machinery shed and garden. The court found that Larry acquired ownership of the garden area and the land upon which the original machinery shed was built by adverse possession. The court determined that Larry failed to establish ownership of the gravel access area by adverse possession but granted him an easement for its use.

---

[1] For simplicity, we will refer to the Appellants Stephanie and James Douglas in the singular as "Stephanie" and the Appellees Pottmeyers as "Larry."

{¶2}    On appeal, Stephanie contends that Larry failed to prove adverse possession of the garden area by clear and convincing evidence.  She argues that Larry failed to demonstrate that he "exclusively" and "continuously" possessed the garden area for the required period of adverse possession – twenty-one years.  Stephanie points to the testimony of two neighbors who alleged that Larry abandoned the garden area for several years while the true owners planted, plowed, and maintained it.  However, evidence in the record supports the trial court's finding of Larry's "exclusive" and "continuous" use of the garden area.  Flatly contradicting the neighbors' testimony, Larry testified that he alone planted, plowed, and maintained the garden every year.  Apparently, the court believed Larry and rejected the neighbors' contrary testimony.  This is a credibility determination that we must defer to on appeal.

{¶3}    Stephanie also argues that by sharing the produce of the garden with the true owners of the disputed tract, Larry could not have possessed the land exclusively.  We reject this argument as well.  "Exclusivity" for purposes of adverse possession looks at acts that indicate ownership by the adverse possessor and acts that exclude true owners from exercising ownership.  Larry's gratuitous sharing of the produce of his garden with neighbors was consistent with ownership of the garden, i.e., owners commonly share the bounty of their gardens with others.

{¶4}    Next, Stephanie argues that the trial court failed to apply a presumption of permissive use between family members when addressing both the garden and the shed.  Because Larry began using the disputed tract when it was owned by his brother John Pottmeyer, Stephanie contends Larry did not overcome the presumption that his use of his brother's land was by permission.  However, because Stephanie failed to

properly raise this argument at trial, or in her proposed findings of fact and conclusions of law post-trial, she has waived it for purposes of appeal.  Consequently, we affirm the decision of the trial court.

I.  Facts Surrounding the Property Dispute

{¶5}    This dispute originates in a plot of land located south of County Highway 60 in Adams Township, Washington County, Ohio.  Ralph and Helen Pottmeyer owned the plot and in 1964 they conveyed a small portion of it -- 1.21 acres -- to their son John Pottmeyer.  John's plot was bounded on the west by land owned by Paul and Viola Tullius.  It was bounded on the south and east by what remained of the Ralph Pottmeyer plot.  County Highway 60 was the northern boundary.

{¶6}    Later, the Ralph Pottmeyers conveyed to the Tulliuses a 1.38 acre parcel of land south of and abutting John's plot.  Consequently, John was bounded on the west and south by the Tulliuses, on the east by the Ralph Pottmeyers, and on the north by County Highway 60.

{¶7}    In 1969 the Ralph Pottmeyers conveyed their remaining land to Larry.  In 1974 Larry constructed a building to store machinery on a strip of land near the southern boundary of John's plot and the Tullius' abutting land to the south.  Larry apparently believed that he owned this land.  Neither John nor the Tulliuses attempted to stop him from building the shed.[2]  Paul Tullius in fact helped him with the construction. Larry also bulldozed the area in front of the machinery shed and spread limestone.

---

[2] In 1997 Larry added a western extension to the original equipment shed.  The court found that Larry did not acquire the land upon which the extension was located by adverse possession.  Larry has not cross-appealed on that issue.

{¶8}   In the disputed strip, there was also a garden which had been in existence prior to the Ralph Pottmeyer conveyances.  Larry and John agreed that Larry maintained this garden since he was conveyed his land in 1969.

{¶9}   In 1977, a boundary dispute arose.  John wanted to build a tennis court and contacted a surveyor to identify the southern boundary of his land.  An unknown surveyor (John could not recall the surveyor's name and had no records relating to the survey), told John that the machinery shed was on his property, i.e., that the southern boundary of his property was south of the machinery shed.  When John told Larry about this, Larry disagreed and hired his own surveyor.

{¶10}  Larry's surveyor, Robert Schultheis, conducted a survey and determined that John's southern boundary was actually north of the machinery shed.  However, Schultheis found that the gravel area in front of the machinery shed was on John's property.  The discrepancy in the surveys appears to be related to the relocation of County Highway 60, which was used as the northern boundary of the legal descriptions.  However, this fact has little bearing on the outcome of the appeal.

{¶11}  John apparently decided that the dispute was not worth further argument.  At trial he explained, "I wasn't going to get into a big argument over a few feet."  From that point on, John took no action concerning the boundary dispute.

{¶12}  In 1987 John conveyed his property to the Raneys, who transferred it to the Wardens in 1994.  Robert Warden, then divorced, transferred the property to the Drayers in 1998.  Stephanie purchased the property from the Drayers' Estate in 2006.

{¶13}  In 2008, Larry filed suit against Stephanie and asked the Washington County common pleas court to quiet title in his favor to the strip of land containing the

machinery shed and extension, the gravel area, and the garden.  Larry argued that he owned this area in fee simple by deed or had acquired it through adverse possession.

{¶14}  The trial court sitting as fact-finder received testimony from Larry and John Pottmeyer on behalf of Larry.  Stephanie Lenhart, James Douglas, and Paul and Viola Tullius testified on Stephanie's behalf.  After receiving proposed findings of fact and conclusions of law from both parties, the court found that the Ralph Pottmeyers conveyed the disputed strip of land to John Pottmeyer.  Thus, Stephanie was the record owner of the disputed tract.  However, the court found clear and convincing evidence that Larry acquired the land upon which the machinery shed and the garden area are located by adverse possession.

{¶15}  The twenty-one year period of adverse possession for the equipment building began to run in 1974 and therefore would have ended in 1995, assuming no intervening acts interrupted any of the necessary elements of adverse possession.  In this regard, the court examined whether the dispute between John and Larry in 1977 destroyed adversity.  It found that John's hiring of a surveyor to assess his boundary did not disrupt the adverse period because it did not result in any effort to recover possession of property.  Furthermore, the court determined that John did not "consent" to Larry's use of the disputed area by doing nothing, but merely "acquiesced."  The court explained: "[a]quiescence because one wishes to avoid a dispute does not have the same legal effect as permission.  The Court has been unable to find any cases, other than between parent and child, where the relationship between the parties has prevented the acquisition of prescriptive rights.  [Stephanie] has provided no such authority to the Court."  Accordingly, the court held that the brief boundary dispute in

1977 did not interrupt Larry's period of adverse possession because John had done nothing to affirmatively take possession of the property or assert his ownership rights.

**{¶16}** The court found Larry had used the garden area continuously since he acquired his land in 1969 and met all elements required to vest title adversely. Thus, he acquired it in 1990. However, the court found that Larry failed to establish ownership by adverse possession of the gravel area in front of the machinery shed. Nonetheless, the court granted Larry an easement over it for access to the machinery building and garden.

**{¶17}** Stephanie filed a timely appeal of this decision.

## II. Assignment of Error

**{¶18}** Stephanie assigns a single error for our review:

THE TRIAL COURT ERRED WHEN IT ENTERED A PARTIAL VERDICT IN FAVOR OF APPELLEES.

## III. Adverse Possession

**{¶19}** Stephanie divides her assignment of error into two principal arguments. First, she contends that Larry did not establish by clear and convincing evidence that he maintained – "exclusive possession" and "continuous possession" of the garden area for the requisite twenty-one year time period. Second, regarding both the machinery shed and the garden area, she contends that the trial court failed to consider a presumption against adverse possession that arises between members of the same family.

### A. The Garden Area

#### 1. Standard of Review

{¶20} The parties dispute the proper standard of review. Stephanie did not specifically refer to our standard of review in her Appellant's Brief. In his brief, Larry contends that Stephanie's arguments concerning the garden are in the nature of a manifest weight claim. In her Reply Brief, Stephanie disputes that she is raising a weight of the evidence argument. Rather she argues "[we] do not challenge the trial court's finding that [Larry] *and* other individual [sic] with their permission grew and harvested the garden. * * * Rather [we challenge] whether that factual finding serves as a sufficient basis to conclude that [Larry] adversely possessed the real property in question." (Emphasis sic.)

{¶21} Typically, appeals on adverse possession claims challenge the manifest weight of the evidence supporting the various elements of adverse possession. See *Stover v. Templeton* (Mar. 11, 1996), Lawrence App. No. 95CA32, 1996 WL 112683, at *1, fn. 1. Some of the arguments in Stephanie's brief appear to be in the nature of a manifest weight claim, while others appear to be legal in nature. To the extent we construe any of Stephanie's arguments as challenges to the manifest weight of the evidence, we will apply deferential review. In other words, we will not substitute our judgment "for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusions of law." *State v. Schiebel* (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54. This is because issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the Court explained in *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273: "[t]he underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and

observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." However, to the extent we construe Stephanie's arguments as challenges to the trial court's choice or application of law, our review is de novo. See *Stover*, supra, at *1.

## 2. The Law of Adverse Possession

{¶22} Adverse possession is a recognized, but not favored, common law method of obtaining title to real property. See *Grace v. Koch*, 81 Ohio St.3d 577, 580, 1998-Ohio-607, 692 N.E.2d 1009. "Viewed from its ultimate effect, it is the ripening of hostile possession, under proper circumstances, into title by lapse of time." 2 Ohio Jurisprudence 3d, Adverse Possession and Prescription § 1, citing Am. Jur. 2d, Adverse Possession § 2. The party seeking to gain title through adverse possession bears the burden of establishing its elements. *Thompson v. Hayslip* (1991), 74 Ohio App.3d 829, 832, 600 N.E.2d 756.

{¶23} Clear and convincing evidence is required to establish each element of adverse possession. *Grace* at syllabus. "Clear and convincing evidence" is "'more than a mere "preponderance of the evidence," but not to the extent of such certainty as required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 331, 1999-Ohio-374, 708 N.E.2d 193, quoting *Cross v. Ledford* (1954), 161 Ohio St. 469, 120 N.E.2d 118, at paragraph three of the syllabus.

{¶24} The elements of adverse possession are "exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." *Grace* at

syllabus; see, also, R.C. 2305.04 (establishing statute of limitations to recover title to or possession of real property at twenty-one years).  Given the nature of adverse possession claims, each case is to be decided on its particular facts.  See *Thompson* at 833.

### 3.  Exclusive Possession and Use

**{¶25}**  Stephanie argues that Larry failed to establish that he exclusively possessed the garden area for twenty-one years.  She points to the testimony of Paul and Viola Tullius, who stated that they saw the Raneys and the Wardens maintain the garden and did not see Larry maintain the garden until after Warden sold the property in 1998.  In response, Larry argues that he testified that he was the only person who planted the garden each year, the only person who plowed it, and that he did not allow anyone else to perform these tasks.  He admits that he would tell his neighbors that they could help themselves to crops from the garden.  Larry contends that this testimony provides a sufficient basis for the trial court's finding that "[t]he annual growing and harvesting of the garden was done by [Larry] or others with [Larry's] permission."  Larry also asserts that the trial court may have discredited Paul Tullius' testimony due to his age, physical and mental condition, and because he admitted bias at trial, i.e., he confessed he would like to see Stephanie win the lawsuit because Larry named him as a necessary party in his original pleading.

**{¶26}**  To demonstrate exclusive use, an adverse claimant bears the burden of establishing clear and convincing evidence of: (1) use of the property that would characterize an owner's use; and (2) use of the property that is "exclusive of the true owner entering onto the land and asserting his right to possession."  *Crown Credit Co.*

*v. Bushman*, 170 Ohio App.3d 807, 2007-Ohio-1230, 869 N.E.2d 83, at ¶53, citing

*Klinger v. Premier Properties* (Nov. 17, 1997), Logan App. No. 8-97-10, 1997 WL

722771, in turn citing *Walls v. Billingsley* (Apr. 28, 1993), Allen App. No. 1-92-100, 1993

WL 135808.  See, also, *Thompson*, supra, at 833.

**{¶27}**  Stephanie's argument here is clearly challenging the manifest weight of

the evidence.  In effect, Stephanie contends that the Tullius' testimony, had it been

given more weight by the trial court, should have precluded the court from finding clear

and convincing evidence of exclusive use.  Credibility determinations of this sort are

almost exclusively reserved for the fact-finder.  The trial court was free to accept all,

part, or none of the Tullius' testimony that contradicted Larry's assertions regarding

exclusive use of the garden area.  See *Holm v. Smilowitz* (1992), 83 Ohio App.3d 757,

778-779, 615 N.E.2d 1047.

**{¶28}**  As Larry contends, there is some competent and credible evidence in the

record that he exclusively used or possessed the garden area.  Planting, plowing,

general maintenance, and harvesting of a garden plot is conduct consistent with its

ownership.  Larry offered this sort of evidence when he testified that no one other than

himself planted, plowed or otherwise tended to the garden.  However, he admitted

allowing the subsequent owners of the John Pottmeyer plot -- with whom he "got along

with great" -- to pick crops from the garden.

**{¶29}**  In this regard, Stephanie contends that Larry's "sharing" of the crops with

his neighbors, i.e., Stephanie's predecessors in interest and the record owners of the

garden area, would preclude a finding of exclusive use.  This aspect of Stephanie's

argument is legal in nature, i.e., she proposes that this sort of "sharing" of property precludes a finding of exclusive use as a matter of law.

{¶30}  Stephanie cites *Yoho v. Robertson* (Apr. 19, 1991), Carroll App. No. 590, 1991 WL 66207, for the proposition that "sharing" of property by an adverse claimant with a true owner precludes a finding of exclusive use or possession.  In *Yoho*, the adverse claimant owned a quarter-interest in land as a tenant in common with his three siblings. Id. at *1.  The claimant alleged that in 1954 he entered into a written agreement to acquire all interest in the property from the sibling co-tenants. In 1988, two of the siblings sought to partition the property.  The claimant defended the suit on the basis that he owned the property via the written agreement.  Id. at *2.  In the alternative, he argued that he acquired it by adverse possession.  Id. at *3.

{¶31}  At trial, the court rejected the written agreement because it did not qualify as a deed.  Id. at *2.  The trial court also rejected the claimant's argument that he acquired the property by adverse possession. Id. at *3.  The appellate court affirmed, noting that the undisputed facts established that the claimant had not occupied the land exclusively because two sibling co-tenants resided on the property during the alleged period of adverse possession. Id.

{¶32}  Thus, *Yoho* is distinguishable.  First, the status of the parties as co-tenants is a point of distinction.  In a tenancy in common, co-tenants have the same rights to the use and possession of the property.  *Collins v. Jackson* (1986), 34 Ohio App.3d 101, 103, 517 N.E.2d 269.  Therefore, a co-tenant adverse claimant generally cannot acquire property held in co-tenancy by mere possession of the property because that possession is presumed consistent with the other co-tenants' right to enter the land

at any time. *Farmers' & Merchants' Natl. Bank v. Wallace* (1887), 45 Ohio St. 152, 164-165, 12 N.E. 439 ("his possession will be regarded, not only as a declaration of his own proprietary rights, but those of his co-tenants as well."); see, also, *Grace*, supra, at 580, fn.1. Therefore, a co-tenant seeking to adversely possess property in co-tenancy must demonstrate a "positive and overt act connected with his exercise of ownership, such as will manifest an unmistakable intention on his part to exclude his co-tenants from the enjoyment of the property." *Farmers* at 165. Consequently, it is a difficult task for one co-tenant to adversely possess property from other co-tenants. He must do something more than merely possess or use the property.

**{¶33}** In our case, Larry was a trespasser, not a co-tenant. Larry's use of the garden area would not be, as in the case of a co-tenancy, also consistent with the rights of the true owners. Even though Larry had no right to enter into the garden area, for twenty-one years he exclusively plowed, planted, and maintained the garden to the exclusion of the true owners. Larry's actions in this regard were consistent with sole ownership of the property.

**{¶34}** Second, the "sharing" at issue in *Yoho* was of the residential use of the premises. But here, Larry gratuitously "shared" the crops of a small garden area with the true owners. Because co-tenants have equal right to the use and enjoyment of the property in a tenancy in common, residing on that property or receiving crops from it could be a use consistent with shared ownership.

**{¶35}** But here, there was no co-tenancy relationship and Larry said he gave the Raneys and Wardens permission to enter into the garden area only to remove crops. This, he explained, was because they were good neighbors. Unless the facts suggest

otherwise, gratuitous sharing of produce from a garden by an adverse claimant is consistent with the adverse claimant's ownership.  In fact, it is a quite normal and common occurrence between neighbors with good relations.  Therefore, the fact that Larry shared crops from his garden with his neighbors would not preclude a finding by clear and convincing evidence of exclusive use and possession of the property.

### 4.  Continuous Use

{¶36}  Stephanie also argues that Larry failed to offer clear and convincing evidence that he continuously used the garden area for twenty-one years.  Stephanie suggests that Larry did not continuously maintain the garden during the time period when the Raneys purchased the property (1987) until Warden sold the property (1998).  This proposition also attacks the weight of the evidence.  Paul Tullius claimed that he did not see Larry maintain the garden until after Warden sold the property in 1998.  In response, Larry contends that he testified that he planted and maintained the garden each year during the alleged period of adverse possession.

{¶37}  To demonstrate continuous use an adverse claimant must show that there was no "substantial interruption" in his use of the property.  *Bullion v. Gahm*, 164 Ohio App.3d 344, 2005-Ohio-5966, 842 N.E.2d 540, at ¶20.  Daily or weekly use is not required, as long as the use shown is continuous enough to indicate "prolonged and substantial use." Id. quoting *Ault v. Prairie Farmers Co-Operative Co.* (1981), Wood App. No. WD-81-21, 1981 WL 5788.

{¶38}  The court found that "[t]he garden area and access to it were used by [Larry] continuously since he acquired his land.  The annual growing and harvesting of the garden was done by [Larry] or others with his permission."  Again, there is

competent and credible evidence in the record to support this finding.  Larry testified that a garden existed in that area for over forty years before he owned the property.  He stated that he continued to care for the garden and planted it each year since he took possession of his land in 1969.  Although the Tullius' testimony clearly contradicted Larry's assertion concerning the garden – the trial court was free to accept all, part, or none of this testimony.  The trial court could rely on Larry's testimony to establish clear and convincing evidence of continuous use.

{¶39}  Apparently in the alternative, Stephanie suggests that Larry's use of the garden was too infrequent or occasional to establish continuous use.  Larry testified that he planted, plowed, and maintained the garden each year beginning in 1969.  The parties testified that the garden was used predominantly in late spring, the summer, and into early fall and lay dormant the remainder of the year.  In the case of a small garden area, under most circumstances annual planting, plowing, maintenance, and harvesting during the productive seasons, and non-use during non-productive seasons amounts to substantial and prolonged use, i.e., it is consistent with an owner's use of the property.  Consequently, we hold that Larry presented some competent and credible evidence that supports the trial court's finding of exclusive and continuous use of the garden area for the requisite time period.

B.  The Presumption Concerning Adverse Possession between Family Members

{¶40}  In her second issue, which relates to both the garden and the shed, Stephanie contends that the trial court failed to apply a presumption that arises regarding adverse possession claims between family members.  Stephanie cites *Arthur v. Arthur* (Dec. 4, 1997), Jackson App. No. 97CA797, 1997 WL 764477 and *Kallner v.*

*Wells*, Scioto App. No. 05CA3030, 2006-Ohio-4634, for the proposition that use of property by family members is presumed to be permissive. Stephanie implies that (1) Larry submitted insufficient evidence to overcome this presumption; and (2) the trial court erred by failing to include this presumption in its decision. In response, Larry argues that Stephanie failed to present this argument either at trial or in her proposed findings of fact and conclusions of law post-trial and has waived it for purposes of appeal. In the alternative, Larry contends that neither *Arthur* nor *Kallner* is controlling and even if they are, the evidence submitted was sufficient to overcome such a presumption, i.e., he "burst the bubble" of the presumption.

{¶41} The failure to raise an argument before the trial court typically results in a waiver of that argument for purposes of appeal. *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 43, 322 N.E.2d 629. In her Reply Brief, Stephanie argues she did not waive the presumption of permissive use between family members because she disputed that John "acquiesced" to Larry's position regarding the boundary dispute by doing nothing, i.e., she contested the consent element.

{¶42} Specifically, Stephanie argues that she brought up the issue of permissive use between family members during her attorney's cross-examination of John Pottmeyer. The discussion concerned the boundary line dispute in 1977:

Q: Okay. Now, did -- when you -- first of all, you hired a surveyor and he determined that the boundary was different than where Larry thought it was and in fact, where you thought it was?

A: Right.

Q: So you now have two surveyors saying different things?

A: Yes.

Q:  Did you and Larry have disagreements over it?

A: Well, yeah.  He -- he agreed with his and well, I said, I don't know.  I said --

Q:  Well, you had a surveyor.

A:  Yeah.

Q:  Did you not agree with him?

A:  Well, I -- yes, I agreed with him.  I had to.  I don't -- I don't -- I'm not a surveyor.

Q:  Okay.  Well, I notice in the -- in the notes from Mr. Mulryan's survey or somewhere, that Mr. Schultheis refers to the surveying project as Larry Pottmeyer versus John Pottmeyer.  It sounded like there was a dispute.

A:  Well, there was a dispute over the line and who was right and who was wrong, and I don't -- like I says, and I didn't care.

***
Q;  Okay, well, you built -- you built -- you saw him build the building.

A: Yes.

Q:  And in 1977, you got into a dispute about it.  Do you ever remember him changing the size of the building while you were there, at a later date?

A:  No, I don't remember.

Q:  Okay.  So, in 1977, you knew there was a dispute, you knew you might own it?

A:  Well, I, yeah, there was a dispute on the two surveyors, yes.

Q:  Okay.  *And what you're telling us is, if you owned it, you didn't care if he used it?*

A:  Well, I -- I wasn't going to get in a big fight over a few feet of ground, if that's what you're asking.

Q:  Because he's your brother?

A:  Well, no, I don't care who it would have been.

Q:  Okay.  But at least, from 1977 on, you knew that -- that there was a dispute?  You knew it wasn't -- that it might be your property, it might be his?

A:  Right.

Tr. 56-59. (Emphasis supplied.)

**{¶43}** Stephanie contends that the italicized remarks above indicate that she was injecting the issue of permissive use between family members into the trial. Assuming this to be true, we find nothing addressing this issue in Stephanie's proposed findings of fact and conclusions of law.

Moreover, it seems clear from the above testimony that John never indicated he gave permission to Larry to use the property. Instead, he was unsure of whether he owned the land upon which the machinery shed was built. He recognized that he might own it, but he was not sure. Either way, John did not feel that it was an issue worth pursuing. And when asked if he did not pursue the boundary line dispute because his brother was involved, John stated that it did not matter that it was his brother. His testimony indicates that he was simply no longer interested in determining the true boundary and it would not have mattered who the dispute was with. Accordingly, we hold that Stephanie did not preserve this issue for purposes of appeal.

IV. Conclusion

**{¶44}** We hold that the trial court properly vested title in the garden area to Larry through adverse possession. The record contains some competent and credible evidence that Larry exclusively and continuously possessed and used the garden area for twenty-one years. Additionally, Stephanie has waived her argument on the applicability of a presumption of permissive use between family members. Thus, we affirm the decision of the trial court.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellants shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.  Exceptions.

Abele, J. & Kline, J.:  Concur in Judgment and Opinion.


For the Court



BY: _____
     William H. Harsha, Judge



### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**