[Cite as *Hoosier v. Hoosier*, 2014-Ohio-5810.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PIKE COUNTY

| | | |
|---|---|---|
| HERBERT HOOSIER, | : | |
| Plaintiff-Appellant, | : | |
| | | Case No. 14CA846 |
| v. | : | |
| HEIRS, DEVISEES OR ASSIGNEES | | DECISION AND |
| OF ABRAHAM HOOSIER, DECEASED, et al., | : | JUDGMENT ENTRY |
| Defendants-Appellees. | : | RELEASED 12/30/2014 |

APPEARANCES:

Joseph D. Kirby, Cole, Kirby & Associates, LLC, Jackson, Ohio, for Appellant.

Robert R. Dever, Bannon, Howland & Dever Co., L.P.A., Portsmouth, Ohio, for Appellees.

Hoover, J.

{¶ 1} This is an appeal from a judgment of the Pike County Common Pleas Court that ruled against plaintiff-appellant, Herbert Hoosier, who claimed, by adverse possession, title to a forty-acre tract of land (hereinafter "the property"). For the following reasons, we affirm the judgment of the trial court.

I. FACTUAL BACKGROUND

{¶ 2} The property is located about three-fourths of a mile off of the public road known as Carrs Run Road in Jackson Township, Pike County, Ohio. The property is described as wooded hillside or isolated woodland and is accessible only by use of a 4-wheeler. The property is not serviced by public utilities and no dwellings or other structures exist on the property. No one has lived on the property for at least four decades, perhaps longer. In order to access the

property from Carr's Run Road, one must cross the property of one or more neighboring landowners. The last deed evidencing ownership of the property was executed in favor of Abraham Hoosier, the appellant's deceased grandfather, and is dated December 5, 1910.

{¶ 3} Appellant initiated this lawsuit in 2012 by filing a complaint seeking to quiet title to the property by virtue of adverse possession. Appellant named as defendants all unknown heirs of Abraham Hoosier as well as several other individuals believed to be the known heirs of Abraham Hoosier.[1] Following the filing of several *pro se* responses, the trial court ordered that additional parties be added as named defendants. Some of the defendants never responded to the complaint but defendants-appellees Jerome Gerald Hoosier, Marcella Donita Hoosier, Denise Clark, Valerie M. Mabra, Cheryl Cooper, Jamelin Wilson, Neil Hoosier, and Greg Hoosier filed a joint answer in response to the complaint.

{¶ 4} The case proceeded to a bench trial on December 20, 2013. The only witnesses to testify at trial were the appellant; the appellant's sister, Daisy Tanner; and defendant-appellee Gerald Hoosier.[2]

{¶ 5} As mentioned above, the trial evidence indicates that the last deed of record conveying title to the property is a deed from Abraham Lett (a widower) to Abraham Hoosier, dated December 5, 1910, and recorded with the Pike County Recorder's Office on May 12, 1911. Evidence was presented at trial that Abraham Hoosier is deceased, although the exact date of his death is unknown. However, the record is void of any evidence demonstrating that a case was filed to probate the estate of Abraham Hoosier. All the parties to this action are the lineal descendants of Abraham Hoosier.

---

[1] Service by publication was completed in the Pike County News Watchman. An affidavit of publication and a copy of the notice is a part of the appellate record.
[2] Defendants-appellees, Marcella Hoosier and Jamelin Wilson, also appeared at trial but did not testify.

{¶ 6} Five children, all of whom are now deceased, survived Abraham Hoosier. At least three of those children, to wit: Abraham Hoosier, Jr., Gus Hoosier, and Elias Hoosier, all had children that survived them. Daisy Tanner testified that Abraham Hoosier, Jr., died in the late 1940's; that Gus Hoosier died in the 1960's or 1970's; and that Elias Hoosier died sometime after Gus Hoosier. Tanner further testified that Elias Hoosier had twelve children, eleven of whom survived him, and that she and the appellant are two of the surviving children of Elias Hoosier. Thus, the appellant is the grandchild of Abraham Hoosier, the last titleholder of record of the property.

{¶ 7} While the children of Gus Hoosier were not identified at trial, it was learned that Abraham Hoosier, Jr., had at least five children - Joe, James, Margaret, Coralee, and Dutch. It was further demonstrated that James Hoosier is deceased, but was survived by children. Three of the children that survived James Hoosier are Gerald Hoosier, Jamelin Wilson, and Marcella Hoosier, who were the defendants-appellees that appeared at trial. Thus, the defendants-appellees who appeared at trial are the great-grandchildren of Abraham Hoosier, and first cousins once removed of appellant. We also note, as the trial court did, that no evidence was introduced to show that there were any probate court proceedings to administer the estates of any of the lineal descendants of Abraham Hoosier and that "there are no recorded instruments evidencing either inter vivos or testamentary conveyance or transfer of any interest in the subject real property after the deed to Abraham Hoosier filed for record on May 12, 1911."

{¶ 8} Appellant testified that in the 1960's or 1970's, he cut a roadway to the property using a bulldozer and used concrete from construction sites as a base for the roadway. Starting in the late 1970's, the appellant maintained and used the roadway to remove three to four truckloads of firewood a year from the property. According to appellant, his father, Elias

Hoosier, also removed firewood from the property as early as the 1950's. Appellant further testified, however, that the roadway no longer provides access from the public road to the property and that for the past six or eight years he has used a 4-wheeler to access the property. Appellant indicated through his testimony that some visible stumps and brush remain on the property as a result of the firewood cutting activities.

{¶ 9} Appellant further testified that since the 1970's, he has visited the property about four to five times a year to hunt mushrooms, rabbits, deer, and grouse. Appellant indicated that he last hunted mushrooms and deer on the property about two years ago.

{¶ 10} Appellant indicated that he placed "no trespassing" signs on the property about thirty years ago. However, it is not clear from his testimony how many signs were placed on the property and appellant stated "they're probably rusted down by now". The appellant also indicated that parts of old barbed wire fencing exist on some spots of the property, mostly nailed to various trees on the property. However little is known about the fence, including its origin, condition, and maintenance history. According to appellant, the property has never been surveyed and it is unknown whether the fence constitutes a perimeter fence.

{¶ 11} The appellant indicated that at some point in the past - exact date unknown - a neighboring landowner constructed a gate across the access road/path used to reach the property. The gate is located approximately one-fourth of a mile off of the "hard surface road". The neighbor gave a key to the gate to the appellant at the time they erected the gate.

{¶ 12} Beside himself, appellant indicated that his wife, his son, his son's ex-wife, his sister Daisy Tanner, and Daisy's husband have all visited the property in the past. Appellant is unaware of anyone else ever visiting the property; but he also indicated that he could not be certain whether other people had used the property to hunt or collect firewood.

{¶ 13} Finally, appellant testified that he has been paying the real estate taxes on the property since 1977. Before that, appellant's father paid the real estate taxes on the property, beginning in the late 1940's or early 1950's. Appellant testified that he believes that his father directed the county auditor to send the tax bills to his address some time ago. Only one tax bill was introduced at trial and admitted as evidence, that being a tax bill indicating taxes due for the first half of 2002. The tax bill still carries the account name "Abraham Hoosier", even though it is apparent that appellant has been paying the tax bills for the past 37 years.

{¶ 14} Daisy Tanner's testimony, as previously mentioned, was helpful in establishing the familial relationships and descendants of Abraham Hoosier. Tanner also testified in regards to the property, recalling that in the late 1960's or early 1970's her father, Elias Hoosier, with her help, squashed an attempt by her uncle, Gus Hoosier, to timber the property. Tanner also indicated that her father lived on the property following his release from the military and "was there for a while". However, the exact dates that Elias Hoosier lived on the property are not known.

{¶ 15} Gerald Hoosier testified that he was two-years old when his father, James Hoosier, died. Gerald indicated that he has never been to the property, and only learned of its existence, and his possible interest in the property, three to four years prior to the trial date. Gerald Hoosier also testified in regards to the familial relationships of the parties.

{¶ 16} On March 25, 2014, the trial court journalized a decision and judgment entry with findings of fact and conclusions of law. The trial court noted, inter alia, that the appellant failed to prove all of the requisite elements of adverse possession by clear and convincing evidence and that the appellant and appellees are "coparceners" with respect to the property. The trial court determined that as coparceners, or tenants in common, the parties have equal rights to possess

and use the property. Therefore, the trial court concluded that to succeed on his adverse possession claim against the appellees, appellant needed to show a positive and overt act on his part manifesting an unmistakable intent to exclude his co-tenants from the enjoyment of the property; a showing that was not made according to the trial court.

{¶ 17} Appellant filed a timely appeal of the trial court's decision and judgment entry.

## II. ASSIGMENTS OF ERROR

{¶ 18} Appellant assigns the following errors for our review:

First Assignment of Error

> The Trial Court's judgment is not sustained by the evidence and is against the manifest weight of the evidence.

Second Assignment of Error

> The Trial Court erred by ignoring significant undisputed facts, testimony and acts by Plaintiff that demonstrate adverse possession against Defendants.

Third Assignment of Error

> The Trial Court's judgment is contrary to law.

## III. LAW & ANALYSIS

*A. Standard of Review*

{¶ 19} We address appellant's three assignments of error together because they assert that the trial court erred in finding in favor of the appellees on his adverse possession claim. Specifically, appellant contends that the trial court's judgment was against the manifest weight of the evidence presented at trial, and that the trial court misapplied the law to that evidence.

{¶ 20} "An appeal of a ruling on an adverse possession claim is usually reviewed under a 'manifest weight of the evidence' standard of review." *Nolen v. Rase*, 4th Dist. Scioto No. 13CA3536, 2013-Ohio-5680, ¶ 9. "In other words, an appellate court will not reverse a trial court's decision on this issue if it is supported by some competent, credible evidence." *Id*. "This

standard of review is highly deferential and even the existence of 'some' evidence is sufficient to support a court's judgment and to prevent a reversal." *Id*. However, where the appellant challenges the trial court's choice or application of law, our review is de novo. *Pottmeyer v. Douglas*, 4th Dist. Washington No. 10CA7, 2010-Ohio-5293, ¶ 21.

*B. The Law of Adverse Possession, Generally*

{¶ 21} "To acquire title by adverse possession, a party must prove, by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." *Grace v. Koch*, 81 Ohio St.3d 577, 692 N.E.2d 1009 (1998), syllabus; *see also Edgington v. Newman*, 4th Dist. Adams No. 11CA917, 2012-Ohio-4962, ¶ 10.

{¶ 22} The party seeking title by adverse possession bears the burden of proving its elements by clear and convincing evidence. *Pottmeyer* at ¶¶ 22-23, citing *Thompson v. Hayslip*, 74 Ohio App.3d 829, 832, 600 N.E.2d 756 (4th Dist.1991), and *Grace* at syllabus. "Clear and convincing evidence" is " 'more than a mere "preponderance of the evidence," but not to the extent of such certainty as required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Ohio State Bar Assn. v. Reid*, 85 Ohio St.3d 327, 331, 708 N.E.2d 193 (1999), quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 23} While adverse possession is a recognized common law method of obtaining title to real property, it is not favored. *See Grace* at 580 ("A successful adverse possession action results in a legal titleholder forfeiting ownership to an adverse holder without compensation. Such a doctrine should be disfavored, and that is why the elements of adverse possession are stringent."). "Viewed from its ultimate effect, it is the ripening of hostile possession, under

proper circumstances, into title by lapse of time." 2 Ohio Jurisprudence 3d, Adverse Possession and Prescription, Section 1.

*C. Adverse Possession Between Joint Owners of the Real Property*

{¶ 24} The majority of appellant's arguments in support of his assignments of error focus on the evidence presented at trial. Specifically, appellant contends that the evidence established each and every element of his adverse possession claim under the requisite burden of proof, and that the trial court ignored or minimized certain testimony. However, we believe this case turns on the application of a subset of laws dealing with adverse possession in the context of a claim between joint owners of real property.

{¶ 25} Here, the trial court concluded, and appellant does not dispute, that the lineal descendants of Abraham Hoosier, i.e. the parties to this action, are coparceners (and thus "co-tenants") with respect to the property. This is so because there is no evidence of inter vivos conveyance by deed or of any testamentary conveyance or transfer of any interest in the property subsequent to the deed to Abraham Hoosier in 1910. *See* R.C. 2105.06 ("When a person dies intestate having title or right to * * * any real property or inheritance, in this state, * * * the real property or inheritance shall descend and pass in parcenary, except as otherwise provided by law * * *[.]"); *see also Winters Nat. Bank & Trust Co. v. Riffe*, 93 Ohio Law Abs. 171, 194 N.E.2d 921, 924 (C.P.1963), *judgment rev'd on other grounds*, 2 Ohio St.2d 72, 206 N.E.2d 212 (1965) ("An estate in parcenary, or in coparcenary, is defined as one which arises where several take by descent from the same ancestor as one heir, all coparceners constituting but one heir and having but one estate, and being connected by unity of interest and of title. It is said that there is now no distinction between an estate in parcenary, and an estate as tenants in common.").

{¶ 26} With the foregoing in mind, "it is proper to direct attention to the principle that a tenant in common cannot assert title by adverse possession against his co-tenant, unless he shows a definite and continuous assertion of adverse right by overt acts of unequivocal character clearly indicating an assertion of ownership of the premises to the exclusion of the right of the co-tenant." *Gill v. Fletcher*, 74 Ohio St. 295, 305-306, 78 N.E. 433 (1906); *see also Pottmeyer*, 2010-Ohio-5293, at ¶ 32 (Quotations omitted.) ("[A] co-tenant seeking to adversely possess property in co-tenancy must demonstrate a positive and overt act connected with his exercise of ownership, such as will manifest an unmistakable intention on his part to exclude his co-tenants from the enjoyment of the property."). This "extremely high standard to establish adverse possession against a cotenant" was enunciated because "possession by one cotenant is presumed to be possession by all." *Grace*, 81 Ohio St.3d at 579, fn. 1, 692 N.E.2d 1009, citing *Ferenbaugh v. Ferenbaugh*, 104 Ohio St. 556, 559, 136 N.E. 213 (1922). Moreover, all co-tenants in a tenancy in common have the same rights to use and possess the property. *Pottmeyer* at ¶ 32, citing *Collins v. Jackson*, 34 Ohio App.3d 101, 103, 517 N.E.2d 269 (8th Dist.1986). "Therefore, a co-tenant adverse claimant generally cannot acquire property held in co-tenancy by mere possession of the property because that possession is presumed consistent with the other co-tenants' right to enter the land at any time." *Id*. Suffice it to say that "it is a difficult task for one co-tenant to adversely possess property from other co-tenants. He must do something more than merely possess or use the property." *Id*.

{¶ 27} Appellant argues that his and his father's "more than a half a century of exclusion" and the appellees "lack of knowledge of the existence of the property" until just prior to the initiation of the lawsuit constitutes a positive and overt act demonstrating his intention to

exclude the remaining co-tenants from the enjoyment of the property. [App. Brief at 7.] We disagree.

{¶ 28} As stated by this Court in *Pottmeyer*, mere possession and use of property is not enough to acquire exclusive title to real property held in co-tenancy by adverse possession. Thus, while appellant's use of the property for recreational purposes and to collect firewood is consistent with his rights as a shared owner of the property, it does not demonstrate adverse or hostile possession. More importantly, the record evidence in this case does not demonstrate any positive and overt acts connected with appellant's exercise of ownership indicating an assertion of ownership of the property to the exclusion of the appellees.

{¶ 29} Appellant makes much of the fact that the appellees and other lineal descendants of Abraham Hoosier were unaware of the property. Gerald Hoosier, the only appellee to testify at trial, indicated that he has never been to the property and only learned of its existence three to four years ago after a conversation with appellant at a family reunion. In our view, however, this fact is not useful for the appellant. Rather, it indicates that the appellees were not on notice that appellant was claiming exclusive title to the property by adverse possession. Put another way, had appellant actually made a positive and overt act manifesting an unmistakable intention on his part to exclude his co-tenants from the property, then at the very least the appellees would have been aware of the existence of the property.

{¶ 30} Chief Justice Marshall once wrote: "[A] silent possession, accompanied with no act which can amount to an ouster, or give notice to his co-tenant that his possession is adverse, ought not, we think, to be construed into an adverse possession." *McClung v. Ross*, 18 U.S. 116, 124, 5 L.Ed. 46 (1820). Appellant mentions the locked gate that was erected across the access road as proof of his intent to exclude the appellees from the property. [App. Brief at 7.]

However, this gate was raised not by appellant, but by a neighboring landowner on his or her own property presumably to prevent the trespass upon the neighboring land. There was no indication that appellant had any part in the construction of the gate or that the gate was erected to keep the co-tenants from accessing the property. Likewise, there is no indication from appellant's testimony that the "no trespassing" signs placed on the property some thirty years ago were directed towards the co-tenants. Rather, the evidence suggests that the signs were raised to prevent strangers from trespassing upon the property. In fact, appellant testified that he did not know the names or locations of most of his relatives until immediately prior to filing the complaint in this case. In sum, appellant failed to demonstrate an overt act on his part putting the appellees on notice of his intent to adversely possess the property to the detriment of their rights as co-tenants.

### IV. CONCLUSION

{¶ 31} With the foregoing in mind, we find that the trial court's judgment was not against the manifest weight of the evidence or contrary to law. Accordingly, appellant's assignments of error are overruled. The judgment of the trial court is affirmed.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Pike County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. and Harsha, J.: Concur in Judgment and Opinion.

For the Court

By:_____
            Marie Hoover, Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.